THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE UNITED VERDE COPPER COMPANY, Appellant, *v.* JAMES A. ROBERTS, as Comptroller of the State of New York, Respondent.

1. CORPORATION — FRANCHISE TAX ON CAPITAL STOCK — SURPLUS. Surplus earnings of a domestic corporation, or property purchased with and representing such surplus, is not taxable as " capital stock employed within this state," under the Corporation Tax Act of 1880 (Ch. 542), as amended.

2. MINING CORPORATION — SURPLUS.  The fact that the operation of a mine may decrease its valuation by exhaustion, does not prevent the profits of the business of a mining corporation, not devoted to dividends, from being properly denominated surplus.

3. TAX ON CAPITAL STOCK — ERRONEOUS INCLUSION OF SURPLUS — UNDISPUTED EVIDENCE — CORRECTION OF COMPTROLLER'S ACCOUNT ON CERTIORARI.  When on the review, by certiorari, of a decision of the comptroller fixing the amount of the capital stock employed within this state, of a domestic corporation, for the imposition of the franchise tax under chapter 542 of the Laws of 1880, as amended, it appears by undis-

74

586    People ex rel. U. V. Copper Co. *v.* Roberts.    [Oct.,

Statement of case.    [Vol. 156.

puted evidence that he has included property, purchased by the relator with its surplus money, the amount represented by such investment of surplus must be deducted from the total amount of capital stock found by the comptroller to be employed within this state.

4. Copper Mining Company — Investment of Surplus in Stock and Bonds of Railroad — Not Subject to Franchise Tax as Capital Stock. The comptroller, in assessing the franchise tax for 1895 upon the capital stock employed in this state of a domestic copper mining company, which had an office in this state but whose mining operations were carried on in Arizona, included certain stock and bonds of a railroad company operating a railroad near the relator's mine. On certiorari, the undisputed evidence showed that the relator had obtained the stock and bonds with profits of its business. otherwise applicable to dividends. *Held,* that the stock and bonds represented surplus, and, therefore, that the comptroller's account should be readjusted by deducting from the amount assessed against the relator for capital stock employed in this state the sum used in purchasing the stock and bonds.

*People ex rel. U. V. Copper Co.* v. *Roberts,* 25 App. Div. 89, reversed.

(Argued June 6, 1898; decided October 4, 1898.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 24, 1898, affirming, on certiorari, a decision of the state comptroller imposing a franchise tax, including penalty and interest, upon the capital stock of the relator employed within this state.

The facts, so far as material, are stated in the opinion.

*Henry G. Atwater* for appellant. The bonds did not represent the capital stock of the relator, but its surplus. (*Williams* v. *W. U. Tel. Co.,* 93 N. Y. 162; *Lee* v. *Neuchatel Asphalt Co.,* L. R. [41 Ch. Div.] 1; Thompson on Corps. § 2153; Morawetz on Corps. § 442; *Schenck* v. *Andrews,* 57 N. Y. 133; *Boynton* v. *Andrews,* 63 N. Y. 93; *Van Cott* v. *Van Brunt,* 82 N. Y. 535; *Huntington* v. *Attrill,* 118 N. Y. 365; *Gamble* v. *Queens Co. W. Co.,* 123 N. Y. 91; *N. Y., L. E. & W. R. R. Co.* v. *Nickals,* 119 U. S. 296; *People ex rel.* v. *Campbell,* 145 N. Y. 587; *People ex rel.* v. *Roberts,* 82 Hun, 313; *People ex rel.* v. *Barker,* 139 N. Y. 55.) Even if the bonds did represent capital stock of the relator, yet they did not represent capital stock employed in this state.

(11 Harv. Law Rev. 95; *People ex rel.* v. *Barker*, 141 N. Y. 118; *People ex rel.* v. *Campbell*, 138 N. Y. 546.)

*T. E. Hancock* for respondent.   The $300,000 of bonds of the United Verde and Pacific Railroad Company are not surplus of the corporation.   (*Williams* v. *W. U. Tel. Co.*, 93 N. Y. 188; *State* v. *Parker*, 34 N. J. L. 482; *Gibbons* v. *Mahon*, 136 U. S. 549.)   The bonds of the United Verde and Pacific Railroad Company, held by the relator within this state, constituted capital stock of the relator employed in the transaction of business within this state.   (*People ex rel.* v. *Campbell*, 138 N. Y. 547; *People* v. *Campbell*, 88 Hun, 544.) It cannot be held as a matter of law that the comptroller erred upon the question of valuation.   (*People ex rel.* v. *Campbell*, 145 N. Y. 587; *People ex rel.* v. *Wemple*, 129 N. Y. 562; *People ex rel.* v. *Wemple*, 138 N. Y. 587; *People ex rel.* v. *Roberts*, 82 Hun, 314; 147 N. Y. 699.)

Bartlett, J.   The relator is a domestic corporation, organized in 1883, in the language of its certificate, " for the purpose of carrying on some of its business in the city of New York, but the mining, milling and other operations of the company are to be carried on near the city of Prescott, county of Yavapai, Arizona Territory."

The record discloses that the only business transacted in the state of New York is the maintaining of an office where certain accounts are kept, and where the vice-president, secretary and treasurer attend, and the occasional making of contracts to be performed in other states; that the business of the company is the mining and milling of copper ore, all of which is carried on at Jerome, Arizona, and the product of the mine is shipped to purchasers from that place, and none of it is brought into the state of New York by the relator.

The company has a selling agency in Chicago and keeps a bank account there, also an office in Butte, Montana, and at Prescott, Arizona, a bank account being also kept at the latter place.

The relator insisted before the comptroller that the only capital stock of the company employed within this state was represented by office furniture, valued at five hundred dollars, and its average bank balance.

The tax under review was imposed for the year ending November 1st, 1895.

The comptroller found that $480,000 of the capital stock of relator was employed within this state and made up as follows, viz. : Average bank account and chattels and the amount invested by the corporation in the bonds and stock of the United Verde and Pacific Railway Company, a corporation operating a railroad in the territory of Arizona, under the following circumstances :

The relator is the owner of copper mines located at Jerome, Arizona; its capital stock is $3,000,000, all of which was issued for the mines.

The company operated its property for some years, transporting its product by wagons to the nearest railway station, a distance of twenty-five miles. Owing to the almost impassable condition of the roads in the winter season it became necessary to construct a railroad over this route, and the United Verde and Pacific railway was built.

It is conceded that nearly the entire business of the railroad company consists in transporting goods to the mines and the copper product therefrom.

The relator took $329,000 worth of stock and bonds of the railroad, which amount was sufficient to build and equip it.

It appears that some little time after this money was advanced to the railway company, and in December, 1895, the bonds were issued to the relator in the city of New York, but very soon after were sent to the president of the company in Arizona.

It also appears that the company had prosperously operated its mine for some years, paying an annual dividend at times as high as ten per cent, and at others varying from six to ten per cent.

When the mining company determined to purchase the

bonds and stock of the railroad company, it ceased paying dividends until that amount was accumulated.

It is undisputed that this amount was surplus, unless the theory adopted by the comptroller and to be presently referred to, is correct.

The vice-president of the company when on the stand was asked the following questions in regard to this amount:

" Q. It might have been profits and it might have been other moneys?

" A. Well, it must have been profits, because the same year we paid $75,000 in dividends and still had a bank balance left.

" Q. And paid the officers of the company their salaries and the wages of employees?

" A. Yes, sir."

In order to meet this direct evidence, that the money used in the purchase of the bonds and stock was accumulated by passing dividends and thus surplus, the learned attorney-general argues that as the mines had been worked ever since 1883, the ore extracted and sold and large dividends paid, they were necessarily to some extent depleted and exhausted and the capital stock of relator impaired, so that no surplus as matter of law could be accumulated.

The logic of this argument leads to the conclusion that the most prosperous mining corporation, doing the heaviest business and paying the largest dividends, is suffering from the greatest impairment of capital and has drifted furthest towards final and hopeless insolvency.

The learned Appellate Division, while affirming the decision of the comptroller, stated that the operation of a mine may decrease its value by exhaustion, or increase it by development. This is very true, and the future of most mining enterprises is matter of conjecture. It is common knowledge that there are copper mines which have yielded enormous returns for years and at present show no signs of exhaustion, but rather increased development.

We are of opinion that this speculative theory as to mining in general, does not overcome the positive proof that these

bonds and stocks were purchased by the surplus moneys of the relator.

The English courts have held that a company working a wasting property like a mine or patent is not prohibited from making dividends, nor is it obliged to set apart a sinking fund to meet any anticipated depreciation. (*Lee* v. *Neuchatel Asphalte Co.,* English Law Rep. [41 Ch. Div.] p. 1.)

In the case cited the company was operating under a, lease, which might be more of a " wasting property " than a copper mine well located.

Mr. Morawetz, in his work on Private Corporations (Section 442), points out that the capital of a mining company is not designed to be used like that of a banking or manufacturing company, in carrying on business permanently; that the exhaustion of a mine cannot be repaired, and there would be no object in accumulating the money obtained by the company through working the mine, so as to keep up the original amount of capital.

He then adds: " It is implied from the character of the speculation of a mining company that the income derived from working the mine shall be distributed among the shareholders as dividends, after deducting the expenses and making reasonable provision for contingencies."

The Appellate Division affirmed the decision of the comptroller upon the ground that the burden rested upon the relator to show that the comptroller was wrong in his valuation of the capital stock employed within this state.

It is undoubtedly the established rule that the determination of the comptroller must stand upon the question of valuation, unless clearly shown to have been erroneous. (*People ex rel. A. C. & D. Co.* v. *Wemple,* 129 N. Y. 558; *People ex rel. Roebling's Sons' Co.* v. *Wemple,* 138 N. Y. 587; *People ex rel. Western Electric Co.* v. *Campbell,* 145 N. Y. 587.)   This rule, however, has no application to the case at bar, as it appears by undisputed evidence that the purchase of the bonds and stock was made with the surplus money of relator, and as the theory adopted by the comptroller to show

the contrary is unsupported by evidence or authority, it follows that the amount represented by this investment must be deducted from the total amount of capital stock found to be employed within this state.

This surplus of the relator, even if placed in the stock and bonds of the railroad company as an independent investment, cannot be regarded as a part of its capital stock employed within this state. (*People ex rel. Singer Mfg. Co.* v. *Wemple,* 150 N. Y. 46.)

This corporation tax under the Laws of 1880 (Ch. 542, as amended), is not imposed upon property, but in the case of a domestic corporation on its franchises and of a foreign corporation on its business. (*People ex rel. Penn. R. R. Co.* v. *Wemple,* 138 N. Y. 1.)

In the case of the relator, where its principal business was conducted outside of this state, it became the duty of the comptroller to ascertain the amount of capital stock employed within this state (Ch. 501, Laws of 1885, § 11) for the purpose of computing the franchise tax.

The relator makes the additional point that, even if the stock and bonds were capital stock of the relator, it could not, under the circumstances disclosed, be regarded as employed within this state, as the object of the expenditure was not primarily an investment, but rather to promote the construction of a railroad for the purposes of the mining company. For reasons already stated, we do not deem it necessary to decide this question, but rest our decision upon the ground that the stock and bonds represent surplus.

The order appealed from should be reversed, with costs, and the comptroller directed to readjust the account against the relator by deducting from the amount assessed against it for capital stock employed within this state the sum used in purchasing the stock and bonds of the United Verde and Pacific Railway Company.

All concur, except Vann, J., not voting.

Order reversed.