PEOPLE ex rel. COMMERCIAL CABLE CO. v. MORGAN, Comptroller.

(Supreme Court, Appellate Division, Third Department. September 9, 1903.)

1. FOREIGN CORPORATIONS—FRANCHISE TAX—CAPITAL—STOCK USED WITHIN STATE.

Under Tax Law (Laws 1896, p. 856, c. 908) § 182, declaring that, where a foreign corporation pays more than 6 per cent. dividends, it shall pay a tax to be computed on the basis of the amount of its capital stock employed within the state, and if its dividends amount to less than 6 per cent. "the tax shall be at the rate of one and one-half mills on such portion of the capital stock at par as the amount of capital employed within the state bears to the entire capital of the corporation," the capital stock of a corporation paying more than 6 per cent. dividends, liable to taxation, is that portion of the capital employed within the state which is represented by the actual value of the property owned by the corporation, whether in money, goods, or other tangible things.

2. SAME—INVESTMENTS.

Under Tax Law (Laws 1896, p. 856, c. 908) § 182, taxing capital stock of foreign corporations paying more than 6 per cent. dividends, employed within the state, capital invested in securities of corporations of a kindred nature, from which the corporation investing derives a practical advantage, is taxable; but capital invested in securities entirely apart from any business of the corporation is not employed within the state, and is therefore not taxable.

Certiorari by the people, on relation of the Commercial Cable Company, against William J. Morgan, as Comptroller of the state of New

York, to review a revision of a franchise tax assessed against the re-
lator. Comptroller's determination modified.

Argued before PARKER, P. J., and SMITH, CHASE, CHES-
TER, and HOUGHTON, JJ.

Edmund L. Cole, for relator.

John Cunneen (William H. Wood, of counsel), for Comptroller.

SMITH, J. The relator having paid a dividend of 8 per cent. in
the year 1897 was required by the statute to pay a tax of 2 per cent.
upon the par value of its capital stock employed within this state
and upon each dollar of such amount. Its business, as appears by
the report made to the Comptroller, is "submarine cables, including
repair steamers and stations in Nova Scotia and Europe." Its cap-
ital stock was of the par value of $10,000,000. There was concededly
employed of its capital without the state $13,162,068.33. Certain as-
sets to the amount of $1,772,161.71 are confessedly within the state
of New York, and further items amounting to $418,085 are claimed
to be for a part of the year only the property of the relator. The
Comptroller has included in the list of assets within New York state
an item for $10,775,000 which represents the par and actual value
of an average during said year of 107,750 shares of stock of the Pos-
tal Telegraph Cable Company, a domestic corporation, which the re-
lator commenced to acquire about January 1, 1897. The relator in
fact acquired during the year 188 shares less than the total of 150,000
shares of the stock of said company, and paid therefor with its own
bonds the sum of $16,000,000. The stock of the said Postal Tele-
graph Cable Company was immediately turned over to the Farmers'
Loan & Trust Company of New York, which was the trustee for
the holders of the bonds of the relator so issued. It was turned
over by the relator as collateral security for the payment of the bonds.
This sum, added to the amounts before stated as concededly within
the state of New York, or part of which is concededly within the
state of New York, makes a total claimed to be within the state of
New York of $12,965,246.71.

The first question to be determined is the rule to be adopted in
ascertaining what portion of the capital stock of the relator is em-
ployed within this state. Section 182 of the tax law (Laws 1896,
p. 856, c. 908), under which this assessment is made, provides that
such a corporation (one paying more than 6 per cent. dividends)
shall pay a tax "to be computed upon the basis of the amount of its
capital stock employed within the state." If the dividends amount
to less than six per cent. "the tax shall be at the rate of one and one-
half mills upon such portion of the capital stock at par as the amount
of capital employed within this state bears to the entire capital of the
corporation." The relator contends that the amount of capital stock
employed within this state is deemed to be such proportion of the
capital stock of the corporation as the amount of capital employed
within this state bears to the entire capital of the corporation. This
rule of ascertainment seems to be conceded by the Attorney Gen-
eral. I am at a loss to find any justification therefor in the statute or
in the authorities. If the dividends be less than 6 per cent., the

statute prescribes this rule of proportion in ascertaining the basis of the tax. If the dividends exceed 6 per cent., no such rule is prescribed by the statute, which requires the tax to be computed upon the capital stock employed within the state, and in ascertaining that I find no assistance in the rule of proportion. It will be noticed that where the dividends exceed 6 per cent. the basis of the tax is the amount of "capital stock" employed within the state, while, if the dividends be less than 6 per cent., the basis of the tax is the proportion of the capital stock that shall be represented by the ratio of the "capital" employed within the state to the entire "capital" of the corporation. It is doubtful whether the Legislature intended to make any distinction between the use of the terms "capital stock" and "capital." By section 189 of the tax law (Laws 1896, p. 860, c. 908), corporations are required to report to the Comptroller "the entire amount of the capital of such corporation and the capital employed by it within this state during such year." They are nowhere required to report the amount of "capital stock" employed within the state. In People ex rel. S. T. C. Co. v. Wemple, 133 N. Y. 323, 31 N. E. 238, in construing a statute which required the tax to be based upon the "amount of capital stock employed within the state," the court held that the basis of the tax was the "portion of the capital" employed within the state, which was represented by the actual value of the property, whether in money or goods or other tangible things. I have found no decision which impairs the authority of this case. It may be, if the capital of a corporation employed within the state should exceed the amount of its capital stock, that such excess could not be made the basis of the tax under the statute; but, until that occurs, authority seems to require that the percentage be obtained upon the basis of the capital used within the state. Moreover, it would be most difficult to distinguish between capital stock employed within the state and capital employed within the state. An interpretation of the statute which would make such a distinction would throw the law into much confusion, while the interpretation here adopted greatly simplifies its enforcement.

Within the plain reading of the statute, it is only the capital stock "employed within the state" which is made the basis of the assessment. If capital be here invested in securities in their nature entirely apart from any business transacted by the corporation, such moneys cannot properly be held to be employed within the state. In People ex rel. Union Ferry Co. v. Roberts, 66 App. Div. 157, 72 N. Y. Supp. 950, we held that capital invested in outside securities was not employed within the state, within the meaning of the statute. The learned Attorney General seeks to make a distinction between the application of this rule to a statute placing a tax upon the capital stock instead of the capital employed within the state. I am not convinced that there is any force in the attempted distinction, especially when, under the construction given, the capital employed within the state is in fact made the basis of the assessment. Moreover, in People ex rel. S. M. Co. v. Wemple, 150 N. Y. 46, 44 N. E. 787, a clear distinction seems to be recognized between capital employed within

the state and capital invested in some corporation whose business is entirely foreign to the business of the company assessed.

It is not easy in all cases to determine what investments should be deemed investments pure .and simple, and what investments should be deemed the employment of capital within the state. The investment in companies of kindred nature, or in the stock or bonds of corporations whose connection with the corporation investing may be of practical advantage, may well be deemed to be the employment of capital within the state. The purchase of the interests of a rival company and the control thereof might be a wise employment of capital. The purchase of large interests in corporations, whereby business might be added to the investing corporation, may be deemed a wise investment of capital. And where an investment appears in the stock or bonds of some kindred corporation, or of some corporation whose business would add profit to the investing company, it may well be presumed that the investment was the employment of capital, rather than an investment simply of surplus earnings.

Under these principles, there are certain investments of the relator within the state which, in my judgment, should be deemed investments, and not employment of capital. The investments in the West Shore Railroad bonds, $107,125; in New York Times bonds, $9,800; in New York Central & Hudson River Railroad Company bonds, $775,729.25; in the United States bonds, $228,000—are all of them investments which have no apparent relation to the advancement of the business of the relator. They may also be deemed to be investments of surplus earnings of the corporation, rather than investments of capital stock. There is concededly invested outside of New York, in ocean cables, plant, and equipment, over $12,000,000, while the capital stock of the corporation is only $10,000,000. The investment of an amount in excess of the capital stock in property not directly related to the business of the relator would seem to give force to the contention of the relator that these investments of capital are investments, purely, and not the employment of capital, within the meaning of the statute. The investments in the Postal Telegraph Company would seem to me to be a presumptive employment of capital for the direct business interests of the relator. The property, however, of the Postal Telegraph Company within the state of New York, is all of the property placed therein employed within the state. Within these rules, a tax of 2 per cent. should be assessed upon Commercial Cable Building bonds, $250,000; real estate, Commercial Cable lines, $84,805; average bank balance of relator, $97,451.82; bills and accounts receivable, $219,500.64; Commercial Union Telegraph stock, $101,835; Postal Telegraph Company, real estate, $140,000; bills and accounts, Postal Telegraph, N. Y., $92,430.62; supplies, stores, Postal, N. Y., $52,905.30; bank balance, Postal, N. Y., $65,763.54. The determination of the Comptroller should be modified in accordance with the rule herein stated.

Determination of the Comptroller modified as per opinion, and, as so modified, confirmed, with $50 costs and disbursements to the relator. All concur.