The People of the State of New York ex rel. The Com-
mercial Cable Company, Appellant and Respondent, v.
William J. Morgan, as Comptroller of the State of New
York, Respondent and Appellant.

1. Appeal. An order of the Appellate Division reversing a determi-
nation of the state comptroller in the assessment of a franchise tax, not as
to the amount of property held by a corporation within the state, but as
to the character of a part of it, presents a question of law reviewable
by the Court of Appeals.

2. Franchise Tax Act — Definition of Term "Capital Stock."
The term "capital stock," as used in section 182 of the Tax Law (L. 1896,
ch. 908), means not the share stock held by individuals, but the actual
capital which it represents employed in this state; when considered as
a basis for a franchise tax, it is the equivalent of the term "capital," and it
is the amount of capital so employed upon which the tax is to be
computed.

3. Investments in Bonds — When Regarded as Capital Employed
Within this State. United States and other bonds, in the absence of
proof that they were bought by a corporation with its surplus, should be
treated as capital employed within this state, and as part of the basis upon
which its franchise tax is to be computed.

4. Investments in Stocks of Other Corporations. Stocks of other
corporations held by a corporation sought to be taxed upon its franchise
fall within the same rule as bonds. The fact that it not only owns the
entire stock of another corporation, but also acquired all of its assets,
property and privileges, except its corporate franchise and some non-
assignable contracts, does not exempt such stock from the operation of
the rule, upon the ground that the ownership of the stock is merged in
the ownership of the assets and privileges represented by it, and is, there-
fore, of no value, where the corporation has never been dissolved, retains
its corporate franchise and, therefore, remains a going concern.

*People ex rel. Commercial Cable Co.* v. *Morgan,* 86 App. Div. 577,
reversed.

(Argued April 25, 1904; decided May 17, 1904.)

Cross-appeals from an order of the Appellate Division of
the Supreme Court in the third judicial department, entered
October 10, 1903, which modified and affirmed as modified a
determination of the defendant assessing a franchise tax upon
the relator for the year ending October 31, 1897.

The relator is a domestic corporation owning and operating a system of cable and telegraph lines extending from this state into other states and countries. Its authorized capital ·stock is $10,000,000, upon which it paid in 1897 a dividend of eight per cent. Its aggregate assets were $31,414,469.21, of which $13,162,068.33 were concededly employed without the state. The basis for the tax was originally fixed by the comptroller at $5,485,860, capital stock employed in this state, upon which the tax was fixed at $10,967.72, but upon a hearing for revision the amount of capital stock employed in this state was reduced to $4,500,000, upon which the tax was cut down to $9,000.

Upon appeal from this decision of the comptroller the Appellate Division ·of the third department still further reduced the amount of capital stock employed in this state to $1,104,691.92, upon which the tax was fixed at $2,209.38, and from the order entered upon that decision both parties appeal to this court.

The relator contends that of its aggregate assets of about thirty-one millions, at least twenty-nine millions are employed without the state, leaving approximately two millions within the state, the larger portion of which is not capital stock or capital employed within this state in any such sense as to furnish a basis for taxation. This contention is sought to be fortified by various combinations of figures set forth at great length in the relator's relief.

The learned attorney-general presents other schedules of figures, from which it is argued that the relator has at least twenty-nine millions of assets employed within this state.

In our view of the case it is unnecessary to reproduce in detail these elaborate and confusing computations except in so far as they bear upon the questions which this court has jurisdiction to review, and that will be done in the opinion.

*Edmund L. Cole* for relator, appellant and respondent. The basis upon which the franchise tax of relator should be computed is such part of the relator's capital share stock at

par as is evidenced by the proportion of the relator's capital employed in the state of New York to the entire employed capital within and without the state of New York. (*People ex rel.* v. *Roberts*, 155 N. Y. 1; *People* v. *D. & H. C. Co.*, 54 Hun, 598; *People* v. *H. Ins. Co.*, 92 N. Y. 328; *People* v. *H. S. M. Co.*, 105 N. Y. 76; *People ex rel.* v. *Roberts*, 168 N. Y. 14; *People ex rel.* v. *Knight*, 173 N. Y. 255; *People ex rel.* v. *Morgan*, 47 App. Div. 126; 162 N. Y. 654; *People ex rel.* v. *Wemple*, 63 Hun, 444; *People ex rel.* v. *Roberts*, 154 N. Y. 101; *People ex rel.* v. *Roberts*, 30 App. Div. 180.)

*John Cunneen, Attorney-General* (*William H. Wood* on the brief) for defendant, respondent and appellant. The holdings of the relator of West Shore Railroad bonds, United States bonds, New York Central and Hudson River Railroad and New York Times bonds, were properly included by the comptroller as assets employed within this state. (*People ex rel.* v. *Wemple*, 129 N. Y. 558; *People ex rel.* v. *Wemple*, 138 N. Y. 587; *People ex rel.* v. *Campbell*, 145 N. Y. 587.) The stock of the Postal Telegraph Cable Company, a domestic corporation, owned by the relator, was capital of the relator employed within this state. (*People ex rel.* v. *Campbell*, 138 N. Y. 545.)

Werner, J. If we had the right to review the facts in proceedings to revise and readjust franchise taxes, the case at bar would present some embarrassing questions that evidently perplexed the comptroller and the Appellate Division. As our jurisdiction is limited, however, to the review of questions of law, we must take the facts as established by the record. The comptroller decided, in the first instance, that the relator's capital stock to the extent of $5,483,860 was employed within this state, and upon this basis he fixed the relator's franchise tax at $10,967.72. The relator then applied for a revision and readjustment of this tax, and the comptroller, under the power conferred upon him by section 195 of the Corporation

436 Peo. ex rel. Commercial Cable Co. *v.* Morgan. [May,

Opinion of the Court, per Werner, J.        [Vol. 178.

Tax Law, reviewed his first decision, reducing the amount of relator's capital stock held to be employed within this state to $4,500,000, and cutting down the tax to $9,000.

This decision by the comptroller, based upon sufficient evidence, has the effect of a judgment rendered by a court, and his return is conclusive upon this appeal (*People ex rel. Roebling's Sons Co.* v. *Wemple,* 138 N. Y. 586), unless the facts upon which his conclusions are based were reversed by the Appellate Division.

Upon consulting the order of the Appellate Division we find that it reduces the amount of relator's capital stock employed in this state from $4,500,000 to $1,104,691.92. In many cases such a reduction would necessarily involve a reversal of the comptroller's decision upon questions of fact, but in the case at bar it clearly appears from the order itself that the conclusion of the Appellate Division was reached, not because the comptroller erred in holding that capital stock was employed here when in fact it was employed elsewhere, but because he held that property owned by the relator and concededly within this state, was not capital stock or capital that was a proper basis for taxation. In other words, the Appellate Division differed from the comptroller, not as to the amount of the relator's property held within this state, but as to the character of a part of it. This presents a legal conclusion that is reviewable by this court.

According to the relator's own showing its New York assets in 1897 were West Shore R. R. bonds, $107,125 ; Commercial Union Telegraph stock, $33,945 ; United States bonds, $158,125 ; New York Times bonds, $9,000 ; N. Y. C. & H. R. R. R. bonds, $775,779.25 ; Commercial Cable Building bonds, $250,000 ; United States bonds, $228,500 ; bank balances, $163,215.36 ; real estate, Postal Telegraph lines, $140,000 ; real estate, Commercial Cable lines, $84,505 ; bills and accounts receivable, Cable and Postal lines, $311,931.26 ; supply stores, $52,904.30. These items make an aggregate valuation of $2,315,330.17.

In addition to the foregoing properties the relator was the

1904.]   Peo. ex rel. Commercial Cable Co. v. Morgan.   437

N. Y. Rep.]      Opinion of the Court, per Werner, J.

owner of 107,750 shares of the capital stock of the Postal Telegraph Cable Company of the face value of $10,775,000, all of which was in this state under circumstances that will be more fully stated later on.

The comptroller's decision does not set forth the items from which he computed the amount of relator's capital stock employed within this state, but it is evident that if the assets above enumerated, which were concededly within this state, are to be regarded as capital stock or capital employed therein, the relator has no just cause for complaint, since the amount upon which its tax was based is considerably less than the sum which might properly have been fixed as the basis of taxation.

The Appellate Division held that the bonds of the West Shore R. R. Co., of the New York Times, of the N. Y. C. & H. R. R. R. Co., and of the United States were neither capital stock nor capital, but simply investments, and, therefore, not taxable. No reference is made in the order of the Appellate Division to the stock of the Postal Telegraph Cable Co. above referred to, but as it is excluded from the schedule of assets held to be a proper basis for taxation, it is obvious that it was regarded as not belonging to that class.

As we view the case it presents for our review three questions of law : 1. What is the meaning to be given to the term "Capital Stock" as used in section 182 of the Corporation Tax Law ? 2. Are the railroad bonds, the United States bonds and the New York Times bonds held by the relator to be considered as part of its capital stock employed within this state under that section ? 3. Is the capital stock of the Postal Telegraph Cable Company held by the relator to be considered as part of its capital stock employed within this state under that section ? These questions, together with the subsidiary considerations which they involve, we will proceed to discuss in the order in which they are stated.

Section 182 of the Corporation Tax Law provides that "Every corporation, joint stock company or association incorporated, organized or formed under, by or pursuant to law in

this state, shall pay to the state treasurer annually, an annual tax to be computed upon the basis of the amount of its *capital stock employed within* this state, and upon each dollar of such amount, at the rate of one-quarter of a mill for each one per centum of dividends made and declared upon its capital stock during each year ending with the thirty-first day of October, if the dividends amount to six or more than six per centum upon the par value of such capital stock. If such dividend or divi-dends amount to less than six per centum on the par value of the capital stock, the tax shall be at the rate of one and one-half mills upon such portion of the capital stock at par as the amount of capital employed within this state bears to the entire capital of the corporation."

It is apparent, of course, that this section applies to two classes of corporations. In the first class are those that declare and pay dividends of six per centum or more upon their capital stock ; and in the second class are those that declare and pay dividends of less than six per centum upon their capital stock. The tax upon corporations in the first class is "to be computed upon the basis of the amount of its capital stock employed within this state," while the tax upon corporations in the second class is " upon such portion of the capital stock at par as the amount of capital employed within this state bears to the entire capital of the corporation." It will be observed that in either case the tax can only be based upon the capital stock employed in this state although the methods for ascertaining the amount thereof are different. If the share stock were the basis for the tax as distinguished from the assets representing capital, then this difference in method might be very material, for in one case it would be competent for the comptroller to fix the amount of capital stock within this state without reference to the amount or location of capital, while in the other case the presence of share stock within the state would furnish a basis for taxation only to the extent of the capital employed here. But if, on the other hand, the actual capital employed in this state, not exceeding the authorized capital stock, is the basis upon which the tax is to be com-

1904.] Peo. ex rel. Commercial Cable Co. v. Morgan. 439

N. Y. Rep.]     Opinion of the Court, per Werner, J.

puted, then, notwithstanding the difference in rate, it is in both cases based upon the same thing, namely, the amount of capital employed within this state. And if the tax is to be computed upon that basis, the rule of proportion, practically agreed upon by the respective counsel but discarded by the Appellate Division, is simply a rule of confusion. This is a simple fact which no amount of statutory verbiage can obscure and which no divergence in methods can change.

What, then, is the basis upon which the tax is to be computed? Is it the share stock held by individuals, or is it the capital held by the corporation? The tax is upon the corporation. It would seem to follow that the amount of the tax is to be measured by something that the corporation owns. A franchise stock corporation owns three things: 1. Its capital, existing in money or property. 2. Its surplus, if any. 3. Its franchise. The franchise is the thing taxed, and the tax is " computed upon the basis of the amount of its capital stock employed within the state." The share stock, or, in other words, the paper certificates held and owned by individuals, are not *employed within this state*. It is the capital represented by such certificates that is so employed. The total share stock of a domestic corporation may be held by non-residents, and yet all of its capital may be employed within the state. In such a case there would be absolutely no basis for taxation, unless the capital of the corporation instead of the share stock held by its members is the thing upon which the tax is to be computed. In construing this section of the Corporation Tax Law, the authorized issue of the share stock of a corporation needs to be considered only as fixing the limit beyond which a corporate franchise cannot be taxed in a case where all of the corporate capital is employed within this state. This court has held that the term " Capital Stock," as used in statutes similar to the one under consideration, means, not share stock, but the property of the corporation contributed by its stockholders, or otherwise obtained by it, to the extent required in its charter. (*Williams* v. *West. Union Tel. Co.*, 93 N. Y. 162.) The

expression " Capital Stock " is often loosely used in speech, and sometimes in statutory phraseology, to denote capital and nothing more. (*State* v. *Morristown Fire Assn.*, 23 N. J. L. 195.) In *Burrall* v. *Bushwick R. R. Co.* (75 N. Y. 211) capital stock was defined as " money or property which is put in a single corporate fund by those who, by subscription therefor, become members of a corporate body." " Capital Stock " and " Capital " are practically the equivalent of each other when considered as a basis for a franchise tax.

The second question to be considered is whether the bonds of the United States, and of the railroads above mentioned, and of the New York Times, held by the relator within this state, are to be treated as capital employed within this state and, therefore, as a part of the basis upon which the relator's franchise tax is to be computed. If these bonds were purchased with capital as distinguished from surplus, they furnish a proper basis for taxation (*People ex rel. Edison El. Light Co.* v. *Campbell*, 138 N. Y. 543); and so, if they were bought with surplus they are not a basis for taxation. (*People ex rel. United Verde Copper Co.* v. *Roberts*, 156 N. Y. 585.)

The comptroller has included these bonds in the list of assets that represent capital for the purpose of franchise taxation. There is nothing to show that they were bought with surplus. The relator does, it is true, claim that they were bought with surplus, but its contention is founded upon nothing more than an argument to the effect that because it has more assets than share stock, there must be a presumption that capital would be invested in properties relating to its business, while surplus would naturally be invested in safe interest-bearing securities. We can indulge in no such presumption, but if we could it would be of no avail as against the comptroller's decision, which should not be disturbed unless clearly erroneous. (*People ex rel. American C. & D. Co.* v. *Wemple*, 129 N. Y. 558.)

The third question that remains to be considered is whether the stock of the Postal Telegraph Cable Co. held by the relator, is a proper element in the basis for taxation. Stocks of

other corporations, held by a corporation sought to be taxed upon its franchise, fall within the same rules that govern the bonds above referred to. (*People ex rel. Edison El. Light Co. v. Campbell, supra,* and *People ex rel. U. V. Copper Co. v. Roberts, supra.*)  The recital of a few facts relating to the acquisition of the Postal Telegraph Cable Co.'s stock by the relator will enable us to determine whether there was anything in that transaction to take it out of the operation of the general rule.  The relator not only acquired all of the share stock of the Postal Telegraph Cable Co., but all of its assets, property and privileges, except its corporate franchise and some non-assignable contracts.  The relator issued bonds in payment of the property and rights thus acquired by it, and then deposited with a trust company, to whom the bonds were turned over for collection, the stock of the Postal Telegraph Cable Co. as collateral security to the bonds.  Upon these facts the relator contends, in effect, that its ownership of the stock was merged in the ownership of the assets and privileges represented by it, and was, therefore, of no value.  The difficulty with this contention is that the Postal Telegraph Cable Company is, in a legal sense, as much of a corporation as it ever was.  The holder or holders of its stock can at any time pursue the business for which it was organized.  The corporation has never been dissolved, and it still retains its corporate franchise.  That its stock has not ceased to have life and value is very cogently shown by the deposit thereof as collateral security to relator's bonds.  To some extent the tangible property and equipment of the Postal Telegraph Cable Company acquired by the relator is used by the latter in the name of the former and under its franchise.  It seems clear, therefore, that the stock of the Postal Telegraph Cable Company held by the relator should be regarded as capital employed within this state, and is a proper item in the sum total upon which the relator's franchise tax should be computed.  This view of the larger features of this case renders it unnecessary to discuss some of the incidental matters, which in other aspects might have had an important bearing upon the result, and leads to

the conclusion that the order of the Appellate Division should be reversed and the revised decision of the comptroller affirmed, with costs to comptroller.

Parker, Ch. J., Bartlett, Haight and Vann, JJ., concur; Gray and O'Brien, JJ., dissent.

Order reversed, etc.