PEOPLE ex rel. CONSOLIDATED GINSENG CO. OF AMERICA v. KELSEY, Comptroller.

(Supreme Court, Appellate Division, Third Department.    May 3, 1905.)

FOREIGN CORPORATION—PRIVILEGE TAX—STATUTE—CONSTRUCTION.
    Under the tax law (Laws 1896, p. 856, c. 908, § 181, as amended by Laws 1901, p. 1365, c. 558), providing that every foreign corporation authorized to do business under the general corporation law shall pay to the State Treasurer, for the use of the state, a license fee of one-eighth

of 1 per cent. for the privilege of exercising its corporate franchises or carrying on its business in the state, to be computed on the basis of the capital stock employed by it within the state, a foreign corporation with an authorized capital stock of $2,000,000, but only employing capital in the state to the extent of $240,000, is liable for the tax only on the capital employed in the state.

Certiorari by the people, on the relation of the Consolidated Ginseng Company of America, against Otto Kelsey, Comptroller of the state of New York, to review the Comptroller's determination of relator's privilege tax. Comptroller's determination modified.

The relator is a foreign corporation. It was organized August 25, 1902, pursuant to the laws of the state of South Dakota, for the purpose of buying, selling, and leasing real estate, raising agricultural products, ginseng, and other medicinal roots and herbs, and marketing the same, and for other purposes. The capital stock of the relator is $2,000,000, divided into 2,000,000 shares, of $1 each, all of which has been issued, although about one-half thereof has been returned to the treasury of the company. The relator maintains a legal office in South Dakota, but it has no property of any kind or description in that state. It has an office in the city of Buffalo, in this state, and it employs capital in this state to the extent of $240,000. The capital so employed in this state is all the capital owned by the relator, and no business is done by the relator, other than with said capital of $240,000, in the state of New York. Prior to April 1, 1904, the Comptroller fixed the relator's license fee at $2,500, and stated the franchise tax against the relator for the year ending October 31, 1903, at $750. On the 1st day of April, 1904, relator made an application to the Comptroller to revise and readjust said account for franchise tax and for license fee, which application was granted; and testimony was thereafter taken by and before said Comptroller, and he then determined that the franchise tax should be reduced from $750 to $150, but that the license fee should be affirmed at $2,500. This certiorari is brought to review such determination. The relator did business in the state of New York only a portion of the year ending October 31, 1903.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Northrup & Tooke (Charles W. Tooke, of counsel), for relator.
Julius M. Mayer, Atty. Gen., for Comptroller.

CHASE, J. The only question for our determination is whether the relator's license fee should be computed on its authorized capital stock of $2,000,000, or upon the $240,000 of capital employed by the relator in this state. The license tax on foreign corporations is provided by section 181 of the tax law (chapter 908, p. 856, Laws 1896, as amended by chapter 558, p. 1365, Laws 1901). The section is headed, "License Tax on Foreign Corporations," and it provides:

"Every foreign corporation * * * authorized to do business under the general corporation law shall pay to the State Treasurer for the use of the state, a license fee of one eighth of one per centum for the privilege of exercising its corporate franchises, or carrying on its business in such corporate or organized capacity in this state to be computed upon the basis of the capital stock employed by it within this state during the first year of carrying on its business in this state, and if any year thereafter any such corporation shall employ an increased amount of its capital stock within this state the same license fee shall be due and payable upon any such increase. * * *"

The franchise tax on domestic corporations is provided by section 182 of the tax law. By such section the franchise tax on domestic

corporations that make and declare a dividend or dividends amounting to 6 or more than 6 per cent. per annum on the par value of their capital stock is computed "upon the basis of the amount of its capital stock employed within this state." If such dividend or dividends amount to less than 6 per cent. on the par value of said capital stock, the tax is computed "upon such portion of the capital stock at par as the amount of capital employed within this state bears to the entire capital of the corporation." If no dividend is made or declared, the tax is computed upon "the appraised capital employed within this state."

When the case of People ex rel. Commercial Cable Co. v. Morgan was in this court (86 App. Div. 577, 83 N. Y. Supp. 998), the relator in that case contended that the amount of capital stock employed within this state is, under section 182, deemed to be such proportion of the capital stock of the corporation as the amount of capital employed within this state bears to the entire capital of the corporation. Such contention of said relator was not sustained in this court. When that case was in the Court of Appeals (178 N. Y. 433, 70 N. E. 967), that court, in construing the provisions of said section 182 of the tax law, used the following language:

"What, then, is the basis upon which the tax is to be computed? Is it the share stock held by individuals, or is it the capital held by the corporation? The tax is upon the corporation. It would seem to follow that the amount of the tax is to be measured by something that the corporation owns. A franchise stock corporation owns three things: (1) Its capital, existing in money or property; (2) its surplus, if any; (3) its franchise. The franchise is the thing taxed, and the tax is 'computed upon the basis of the amount of its capital stock employed within the state.' The share stock, or, in other words, the paper certificates, held and owned by individuals, are not employed within this state. It is the capital represented by such certificates that is so employed. The total share stock of a domestic corporation may be held by nonresidents, and yet all of its capital may be employed within the state. In such a case there would be absolutely no basis for taxation, unless the capital of the corporation, instead of the share stock held by its members, is the thing upon which the tax is to be computed. In construing this section of the corporation tax law, the authorized issue of the share stock of a corporation needs to be considered only as fixing the limit beyond which a corporate franchise cannot be taxed in a case where all of the corporate capital is employed within this state. This court has held that the term 'capital stock,' as used in statutes similar to the one under consideration, means, not share stock, but the property of the corporation contributed by its stockholders, or otherwise obtained by it, to the extent required in its charter. Williams v. West. Union Tel. Co., 93 N. Y. 162. The expression 'capital stock' is often loosely used in speech, and sometimes in statutory phraseology, to denote capital and nothing more. State v. Morristown Fire Ass'n, 23 N. J. Law, 195. In Burrall v. Bushwick R. Co., 75 N. Y. 211, capital stock was defined as 'money or property which is put in a single corporate fund by those who, by subscription therefor, become members of a corporate body.' 'Capital stock' and 'capital' are practically the equivalent of each other, when considered as a basis for a franchise tax."

The language so used is applicable to the case now under consideration. It is the latest expression of the courts construing the meaning of the words "capital stock employed in this state," as used in the tax law. It is controlling upon us, and it is also in accord with the previous expressions of this court. The license fee should

therefore have been computed on the sum of $240,000 instead of the sum of $2,000,000.

The determination of the Comptroller should be modified by reducing the license fee to $300, and, as so modified, confirmed, with $50 costs and disbursements to the relator. All concur.