STRATTON'S INDEPENDENCE, Limited, v. HOWBERT,
Revenue Collector.

(District Court, D. Colorado. September 3, 1912.)

No. 5,781.

1. TRIAL (§ 177*)—PEREMPTORY INSTRUCTION—MOTION BY BOTH PARTIES—EF-
FECT.

Where, in an action tried to a jury, both parties move for a peremptory
instruction, the case becomes one of law for the court and the right to
a verdict by the jury is waived.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. §
177.*]

2. INTERNAL REVENUE (§ 7*)—CORPORATION TAX ACT—"NET INCOME"—MINES.

The words "net income," as used in Corporation Tax Act Aug. 5, 1909,
c. 6, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 946), imposing a cor-
poration tax of 1 per cent. on the net income of corporations, do not
contemplate an allowance in favor of a corporation operating a mine for
ore in place extracted from the property; the net income being the value
of what is extracted after deducting the cost of extraction and treatment
and the cost of administering the corporation, with a reasonable reserva-
tion for contingencies.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10;
Dec. Dig. § 7.*

For other definitions, see Words and Phrases, vol. 5, pp. 4779, 4780.]

3. INTERNAL REVENUE (§ 7*)—CORPORATION TAX ACT—MINES—ALLOWANCE
FOR DEPRECIATION—"NET INCOME."

In determining the net income of a corporation operating a mine, on
which the corporation is taxable under Corporation Tax Act Aug. 5, 1909,
c. 6, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 946), the corporation is
not entitled, under the provision authorizing a reasonable allowance for
depreciation of the property, to a deduction for ore in place extracted
from the property.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10;
Dec. Dig. § 7.*]

4. INTERNAL REVENUE (§ 2*)—CORPORATION TAX—APPORTIONMENT.

Corporation Tax Act Aug. 5, 1909, c. 6, 36 Stat. 112 (U. S. Comp. St.
Supp. 1911, p. 946), imposing a corporation tax on the net income of
corporations, is not unconstitutional as imposing a direct tax not appor-
tioned according to population, though with reference to mining com-
panies the net income of the corporation is determined by ascertaining
the value of ore extracted after deducting the cost of extraction and
treatment and the cost of administering the corporation, with a rea-
sonable reservation for contingencies, since such method of determina-
tion does not make the tax a tax on the corpus of the estate.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 2; Dec.
Dig. § 2.*]

Action by Stratton's Independence, Limited, against F. W. How-
bert, Collector of Internal Revenue. Judgment for plaintiff.

William V. Hodges, of Denver, Colo., for plaintiff. Harry E. Kel-
ly and Ralph Hartzell, both of Denver, Colo., for defendant.

POPE, District Judge. [1] This case is pending at this time upon
a motion for a peremptory instruction presented respectively by both

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff and defendant. This makes the case one of law for the court and leaves nothing to the jury but simply to sign such a verdict as the court shall, under the law, direct.

The limitations upon the time of the court have precluded the filing of a formal opinion upon this matter, which the court recognizes to be one of great importance. At the same time the latter consideration leads the court to the view that it would not be doing full justice to all concerned, especially in view of the very thorough argument, were it not at least to indicate the grounds upon which the conclusions presently to be announced are reached.

The case is presented to the court and to the jury upon a stipulation as to the facts. The stipulation concludes with an argument that three questions of law result from the record. The second question was waived upon the argument by counsel for the government; the third question, while not waived by counsel for the plaintiff, was not argued and is not considered to be for decision.

[2] The only question pressed at the hearing was the following:

"Is the value of the ore in place that was extracted from the mining property of the plaintiff during the years in question properly allowable as depreciation in estimating the net income of the plaintiff subject to taxation under the Act of Congress of August 5, 1909, 36 Statutes, chapter 6, pp. 11, 112–117 (U. S. Comp. St. Supp. 1911, p. 946)?"

The determination of this question involves three matters: First, the meaning of "net income" as used in this statute; second, the meaning of "a reasonable allowance for depreciation of property," as therein used; and, third, a determination of whether the contention of the government is met by any constitutional limitations.

As to what is meant by the words "net income," the relevancy of this results, of course, from the fact that the statute imposes an excise tax of one per cent. on such net income. Does "net income" as thus used contemplate an allowance in favor of the company for ore in place extracted from the property, or is it to be determined without such allowance? According to ordinary understanding it is undoubtedly true that in the operation of such corporations the ore extracted is not deemed an element to be reckoned with in determining the net income. In popular sense the net income of mining properties is the proceeds of what is extracted, after deducting the cost of extraction and treatment, and the cost of administering the company which may be conducting the operations, and finally after a reasonable reservation for contingencies. This is true not only as a matter of general understanding, but has been held uniformly by the courts to be a proper rule in determining whether or not a dividend is declarable by such companies. The doctrine as deduced from People v. Roberts, 156 N. Y. 585, 51 N. E. 293, Morawetz on Private Corporations, § 442, and other authorities, is that the net income of a mining property for the purposes of dividends does not take into account so-called waste of the property by reason of the extraction of ore in place, but that such is to be determined by a computation of the proceeds of the company, after a deduction for operation, expenses of the company, and such reasonable contingencies as may in the light of experience be ex-

pected. The following English cases, cited by the United States Attorney, are in point upon this: The King v. Atwood, 30 Revised Reports, 322; Lee v. Newchatel Asphelte Co., 41 Chancery Div. 1; Coltness Iron Co. v. Black, Assessor, 6 Appealed Cases, p. 315; Wilmer v. McNamara & Co., Ltd., 1895 Second Chancery, p. 245.

If, therefore, the net income is not affected for the purposes of dividends by the amount of ore extracted, neither should it be affected by that circumstance for the purpose of an excise tax. We conclude therefore that the words "net income" do not carry with them any contemplation of law that there shall be such a deduction as plaintiffs here claim.

[3] Coming now to the second provision of the statute and the one upon which the argument has largely been rested, does the provision requiring "a reasonable allowance for the depreciation of property" require a deduction for ore in place extracted therefrom? It is claimed by the plaintiff that this provision distinguishes the case from the American and English authorities above referred to. This contention if sustained, is of far-reaching effect. Its practical result will be to free mining companies from any substantial obligations under this statute, since the value of ore in place when extracted, plus the cost of extraction and the several other items which are properly allowable under the statute as against the proceeds therefrom, will, in practically all instances, leave little or nothing as the net income to be assessed by the government. Of course, the results of a given construction are not to be calculated with if the intent of the statute is plain, and, if the statutory intent is clear that such corporations are exempt, the result is not a matter of judicial concern. At the same time, in determining what is the meaning of a statute, the effect of a construction contended for is of some relevancy as throwing light upon the congressional intent. We have here a class of corporations which owe their possession of property at all to a very liberal system of our government, by which mining property is acquired, being simply by possession, development, and final payment of what is in many cases an insignificant amount as compared with the value of the property. We are also dealing with a class of corporations to whom the use of the corporate functions is perhaps of more value and importance than in any other branch of industry. Mining is essentially a class of activity which owes its life to aggregate contributions rather than individual enterprise. The statute, which finds its justification in the power to tax the carrying on or doing business, is peculiarly applicable to mining corporations in which the corporate function is of such value. Viewing the matter from these two standpoints, therefore—one the source from which the property comes and the other the value of the corporate life—there results an initial presumption that Congress had in mind this class of corporations, along with others, and that unless the terms of the statute otherwise demonstrate they are to be considered as included within the provisions of the act.

The ordinary definition of "depreciation" is the lessening of value. As applied to mining properties, the word carries with it, as in the case of any other business, the idea of deterioration in visible improve-

ments, such as mills and other surface structures and perhaps the underground improvements so far as they are put in by the hand of man, and therefore, speaking popularly, when we think of depreciation in mining properties, we think of a lessening in value by time, or perhaps by accident, of those physical elements which go to develop and to improve the property. Now, does this meaning, commonly entertained and accepted and which is common to every class of corporations, become enlarged in case of mining companies so as to make the extraction of ore likewise an element of depreciation? The court's view is that it does not. This conclusion is in part induced by the reasons which have been above discussed in connection with the term "net income" and in part by the peculiar nature of the mining business. This latter is sui generis. It lives by dying. It is a business that is intrinsically uncertain. The segregation of part of a stock of goods is a definite detraction from the whole. The excavation of a body of ore, however, may reveal other bodies and result in immeasurable increment. The taking out of ore, while in a sense depreciation from the body, very often leads to the revealing of still larger bodies, and thus results, not in a lessening of the value of the claim, but in a great increase in such value. Mining excavation, when properly conducted, is very often more a development than a waste or a detraction. As applied to this class of corporation, having as its purpose to exhaust—it may be a year hence or a hundred years hence— the body of ore for profit, the mere fact that ore may be extracted does not in my judgment make the value of such ore an element to be classed and deducted as a depreciation of the property. The court therefore holds, as to this second provision of the statute, that the extraction of ore does not constitute a credit in favor of mining companies upon the account between them and the government when this excise tax is to be assessed.

It only remains to determine whether the effect of this would be to lead to constitutional barriers, and thus either to demonstrate that Congress could not have meant what the government here contends, or, second, that if Congress did mean this, it was attempting to do that which is contrary to the supreme law of the land.

[4] It is argued very forcefully by counsel for the plaintiff that the effect of this contention of the government, if sustained, is to impose a tax upon the corpus of its estate, and thus to impose a direct tax within the prohibition of the Constitution. It is said that, if this contention be sustained, then there will be a tax of one per cent., as an excise tax for the use of the corporate functions, put upon every dollar's worth of ore taken out. It is said that Congress could not have meant this, because Congress presumably intended to legislate in view of constitutional limitations, and the Constitution does not permit a direct tax save upon the basis of population. The case of Flint v. Stone Tracy Co., 220 U. S. 108, 165, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, is cited as sustaining this position. An examination of that case, however, leads to the conclusion that, rather than establishing this contention, it establishes the contrary. It shows that counsel confuse between what is selected as an object of

taxation and what is used simply as a standard by which the excise tax may be measured. In the Flint-Stone Case there was a very strong contention that the present tax could not be upheld for the reason that many of the elements of income upon which the one per cent. operates are such as had been held in the income tax case (Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759; Id., 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108) not to be the subject of taxation by Congress save according to population. The court, however, in Flint v. Stone, holds distinctly that the lawmaking power may adopt as a basis for assessing an excise tax that which, if attempted as a matter of direct taxation, would not be at all permissible. In other words, the doctrine is that the use of this nontaxable basis as a standard for an excise tax is permitted, whereas a tax directed against such property, nontaxable save under constitutional conditions not complied with, would, of course, not be permitted.

The court says, on page 165 of 220 U. S., page 354 of 31 Sup. Ct. (55 L. Ed. 389, Ann. Cas. 1912B, 1312):

"The measure of taxation being the income of the corporation from all sources, as that is but the measure of a privilege tax within the lawful authority of Congress to impose, it is no valid objection that this measure includes, in part at least, property which as such could not be directly taxed."

This case reviews the prior cases, including Society for Savings v. Coite, 6 Wall. 594, 18 L. Ed. 897, and demonstrates that this is a rule which the Supreme Court of the United States has consistently adhered to. It follows, therefore, that this last question must likewise be resolved against the complainant and that a verdict must go accordingly.

The effect of this rule is, of course, simply to eliminate any element of the complaint as a basis for recovery which rests upon this contention of law. However, the court is advised by counsel from the argument that there are certain items in the complaint which, independent of this, are due from the government—some matters connected with taxes and the like—and if counsel have agreed, as they intimated they would, upon this amount, the court will hand the jury a verdict finding in favor of the plaintiff for such sum confessedly due.