No. 22,451.

THE NORTH AMERICAN PETROLEUM COMPANY, *Plaintiff*, v. RICHARD J. HOPKINS, as Attorney-general, etc., et al., as The THE STATE CHARTER BOARD, *Defendants*.

SYLLABUS BY THE COURT.

FOREIGN CORPORATION—*Requisites for Admission to Do Business in Kansas—Duty of Charter Board.* A foreign corporation organized with shares of stock that are without any nominal or par value may be admitted to do business in this state; and the charter board cannot lawfully refuse to make the inquiry concerning such corporation directed by section 2136 of the General Statutes of 1915, where the corporation in its application to do business in this state fully complies with section 2137 of the General Statutes of 1915.

Original proceeding in mandamus.  Opinion filed June 21, 1919.  Writ allowed.

*John J. Jones*, of Chanute, and *E. L. Foulke*, of Wichita, for the plaintiff.

*Richard J. Hopkins*, attorney-general, and *S. N. Hawkes*, assistant attorney-general, for the defendants.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff, by mandamus, seeks to compel the defendants to consider the plaintiff's application to do business in this state as a foreign corporation. The petition alleges, among other things:

"That on the 7th day of May, 1919, the plaintiff filed with the said defendants an application for permission to do business as a foreign corporation in the state of Kansas. That said application was filed upon the printed forms furnished by the secretary of state of the state of Kansas, and that said application set forth the following: (1st) The certified copy of its charter or articles of incorporation; (2d) the place where the principal office of the corporation was located; (3d) the place where the principal office and place of business in the state of Kansas was to be located; (4th) the full nature of the business that said corporation is to conduct in the state of Kansas; (5th) the name and address of each of its trustees, officers and directors; (6th) a detailed statement of the assets and liabilities of the corporation, sworn to by the president and secretary; (7th) the written consent irrevocable that

11—105 KAN.

action might be commenced against it in any county of this state. All in due form as provided by the statutes of the state of Kansas.

"Plaintiff further states that it is a corporation duly organized in accordance with the laws of the state of Delaware. That its capital is unimpaired and that it is organized for a purpose for which a domestic corporation may be formed, and the business which the corporation is to engage in in the state of Kansas is such business as is not prohibited by the laws of the state of Kansas, and for which business a domestic corporation may be organized to transact.

"Plaintiff further states that in due time said application to engage in business in the state of Kansas as a foreign corporation was duly presented to the charter board of the state of Kansas, and that on the 31st day of May, 1919, said charter board, at a special meeting, entered an order and finding in words and figures as follows:

" 'Now upon this 31st day of May, 1919, at a special meeting of the state charter board, all members being present, the application of the North American Petroleum Company for permission to do business in this state is presented for consideration. The board finds that said company has been incorporated under the laws of the state of Delaware and that its certificate of incorporation provides that its shares of stock are without any nominal or par value, and the board finds that a corporation of such nature is not such a corporation as is contemplated by the laws of Kansas and that such foreign corporation should not be admitted to do business in the state of Kansas for that reason.

" 'And the board further finds that on account of the findings as above stated it is unnecessary for the board to make any inquiry with reference to the solvency of such corporation, or to determine whether or not its capital is unimpaired and, therefore, the board declines to make any inquiry or investigation of the corporation or as to whether or not its capital is unimpaired and does, therefore, decline to grant its permission to said corporation to do business in the state or to issue any certificate setting forth the fact that the application of the corporation to do business in the state has been approved or that such corporation is authorized to do business in this state.'

. . . . . . . . . . . . .

"The plaintiff further alleges that it is entitled to do businss in the state of Kansas as a foreign corporation and has complied with all the statutes of the state of Kansas on its part and with all the rules and regulations of the charter board of the state of Kansas.

. . . . . . . . . . . . .

"That plaintiff further alleges that said defendants refuse to consider its said application for permission to do business as a foreign corporation in the state of Kansas wholly and solely upon the ground that, being a foreign corporation organized with no-par value stock, it could not be admitted as a foreign corporation under the laws of the state of Kansas."

The defendants have demurred to the petition, and the cause is heard on the demurrer. A consideration of section 2136 of the General Statutes of 1915 is necessary. That statute reads:

"The state charter board, in passing upon the application of a foreign corporation, shall make special inquiry with reference to the solvency of such corporation, and for this purpose may require such information and evidence as they may deem proper. If they shall determine that the corporation is organized in accordance with the laws of the state, territory or foreign country under which it is incorporated, that its capital is unimpaired, and that it is organized for a purpose for which a domestic corporation may be formed, the application shall be granted, and the approval of the charter board indorsed thereon, and, upon the payment of the fees provided by this act to be paid, the application shall be filed in the office of the secretary of state, and the secretary of state shall issue a certificate setting forth the fact that the application of the corporation has been approved by the charter board and that such corporation is authorized to engage in business in this state."

This statute declares that when the showing prescribed thereby has been made, the application shall be granted. The petition alleges facts which show that the plaintiff complied with this statute.

Section 2137 of the General Statutes of 1915 must also be considered. The section reads:

"Any corporation organized under the laws of any other state, territory, or foreign country, and seeking to do business in this state, shall make application to the state charter board, upon blank forms supplied by the secretary of state, for authority to engage in business in this state as a foreign corporation. Such application shall set forth: (1) A certified copy of its charter or articles of incorporation. (2) The place where the principal office of the corporation is located. (3) The place where the principal office or place of business in this state is to be located. (4) The full nature and character of the business the corporation proposes to conduct in this state. (5) The name and address of each of the officers, trustees or directors of the corporation. (6) A detailed statement of the assets and liabilities of the corporation, which shall be subscribed and sworn to by the president and secretary of the corporation. (7) The written consent of the corporation, irrevocable, that actions may be commenced against it in the proper court of any county in this state in which a cause of action may arise or in which the plaintiff may reside by the service of process on the secretary of state, and stipulating and agreeing that such service shall be taken and held, in all courts, to be as valid and binding as if due service had been made upon the president and secretary of the corporation, and shall be executed by the president and secretary of the company and authenticated by the seal thereof, and shall be accompanied by a duly certified copy of the

order or resolution of the board of directors, trustees or managers of the corporation authorizing the said secretary and president to execute the same."

The petition shows that the plaintiff, in its application to the charter board, complied with this section.

The statute explicitly requires the application of a foreign corporation to be granted if these three facts are found to exist:

(1) That it is organized in accordance with the laws of the state under which it is incorporated;

(2) That its capital is unimpaired;

(3) That it is organized for a purpose for which a domestic corporation may be formed.

In the view of the court, the language used shows that the legislature considered how far the character of a foreign corporation seeking permission to do business here must correspond with that of a domestic corporation; that in requiring the organization to be in accordance with the laws of the creating state, and to be for a purpose for which a corporation could be here created, the legislature marked the limits of its exactions in that regard, and by fair implication declared it to be unnecessary that the framework of the corporation, so long as its purpose was one for which a charter might be granted in Kansas, should be the same as that employed in this state. Until 1906, our constitution contained the provision that "dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder" (Gen. Stat. 1901, § 211), but foreign corporations were never barred from the state because organized under laws which did not impose this double liability—a difference both of form and substance that seems to the court greater than that now under consideration.

The defendants say that because the shares of stock of the plaintiff have no fixed or nominal par value it will be difficult for the officials of this state to determine the amount of annual fees that the corporation should pay; and that there is no means of knowing what the capital stock of the plaintiff is, without an examination of its assets. These objections arise out of the fact that the plaintiff corporation is organized

on a plan that does not call for a division of its capital into shares, each representing so many dollars of capital. Under the plaintiff's plan of organization, the capital may be much or little, and that capital is not divided into money shares, but into fractional parts. This makes it necessary to consider chapter 121 of the Laws of 1917, which, in part, reads:

"Every foreign corporation authorized by the charter board to engage in business in this state shall, before such certificate of authority is issued, pay to the secretary of state a fee to be known as capitalization fee, based upon that proportion of its lawfully issued capital which it proposes to invest and use in the exercise and enjoyment of its corporate privileges within this state, to wit: (a) For a corporation proposing to use one hundred thousand dollars of its capital stock in the state of Kansas, or any less amount, the fee shall be one-tenth of one per cent of the amount; provided, that the minimum capitalization fee to be paid by any corporation shall be ten dollars; (b) For a corporation proposing to use a greater amount of its capital in business within the state of Kansas than one hundred thousand dollars, the capitalization fee shall be one hundred dollars, and in addition thereto one-twentieth of one per cent of the amount of such capital to be used in Kansas over or in excess of one hundred thousand dollars."

The problem of determining the solvency and *bona fide* capitalization of the plaintiff presents no unusual difficulty. The fact that the shares of its stock have no nominal par value is of little consequence. Any prudent charter board, in determining whether a foreign corporation is worthy of admission to do business in Kansas, would attach little importance to the nominal value of its shares of stock, even if they have a nominal value. As in all other cases, the charter board should concern itself earnestly to ascertain the genuine capital—those assets permanently devoted to the corporate business as a basis for its business credit, and upon which its hope of profits is rationally founded.

The "lawfully issued capital" and the "capital stock" of such corporations are the assets that it devotes to the prosecution of its business. When the value of those assets is ascertained, the fee required to be paid by law can be based on that portion of the assets which the corporation proposes to "invest and use in the exercise and enjoyment of its corporate privileges within this state."

The defendants contend that the plaintiff is not such an organization as is called a corporation in the constitution and

laws of this state. This contention is based on the same facts as are the other contentions just disposed of. The answer to this contention is that corporations without capital stock and without shares of stock are not new; they are as old as corporations themselves, and have existed in England and in this country for many years; our constitution recognizes them, and we have laws for their control and government.

The plaintiff can be admitted to do business in this state; and the defendants cannot refuse to make the inquiry concerning it directed by section 2136 of the General Statutes of 1915.

It follows that a writ of mandamus should and will issue.

MARSHALL, J. (dissenting) : Under our statute admitting foreign corporations to do business in this state, such as are not admitted must be considered as excluded; at least when those statutes are applied to private corporations organized for profit.

The constitution and laws of Kansas recognize three classes of corporations, public, charitable, and those organized for profit. Of the last two classes there are fifty-five distinct groups provided for. (Gen. Stat. 1915, § 2099.) The charter of a corporation organized for profit, under the laws of this state, must set forth the amount of its capital, the number of shares into which that capital is divided, and the number of shares held by each stockholder. (Gen. Stat. 1915, § 2106.) It follows that, in this state, a private corporation for profit cannot be organized as the plaintiff corporation is organized.

It will probably not be contended by any one that a foreign public corporation can be admitted to do business in this state, under our law concerning foreign corporations; and it probably will not be contended that our foreign-corporation law applies to foreign charitable corporations. If these assumptions are correct, neither foreign public or charitable corporations will be admitted to do business in this state under our present law.

We have laws regulating public and charitable corporations, but further consideration of them is unnecessary—the plaintiff is neither; it is a private corporation organized for profit. All the laws of this state relating to foreign corporations con-

cern those that are organized for profit. These laws are based on the principle that all corporations organized for profit have a named or fixed capital stock divided into shares, each representing so many dollars of that stock. In addition to this, foreign corporations admitted to do business are subject to the same laws and control as domestic corporations. (Gen. Stat. 1915, § 2140.)

The difficulties, which have been summarized in the opinion, suggested by the defendants, strengthen the argument to show that the laws of this state do not apply to corporations organized as the plaintiff is, and that such corporations cannot be admitted to do business in this state.

The law of this state does not provide for the admission of a corporation such as the plaintiff is; it is, therefore, excluded; and the defendants were right when they refused to consider the plaintiff's application. These conclusions are supported by *Kansas City Bridge & Iron Co. v. Comm'rs of Wyandotte Co.*, 35 Kan. 557, 560, 11 Pac. 360, where this court said:

"That a corporation created in a foreign state may transact its business in this state, if not repugnant to or prejudicial to our laws, is too well settled to need comment."

And by *The State v. Telegraph Co.*, 75 Kan. 609, 90 Pac. 299, where this court held that—

"For failure to comply with the law a foreign corporation engaged in interstate commerce and transacting business for the federal government may be ousted from the privilege of engaging in non-governmental intrastate business." (Syl. ¶ 5.)

JOHNSTON, C. J., joins in the dissent.