**STAPLES, Secretary of State, v. KIRBY PE-TROLEUM CO.  (No. 6659.)**

(Court of Civil Appeals of Texas. Austin. Feb. 21, 1923.)

**1. Taxation ⬅═⇒378(1) — "Authorized capital stock" defined.**

The "authorized capital stock" of a corporation is the number of shares authorized to be subscribed, and which have actually been subscribed, multiplied by the face or par value of each of such shares, all of which must have been subscribed before issued, in view of Rev. St. arts. 1122 and 1125.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Authorized Capital.]

**2. Taxation ⬅═⇒397—"Capital stock" of foreign corporation having stock of no par value defined.**

Where the shares of a foreign corporation licensed to do business in Texas have no par value, the words "capital stock," within the meaning of Vernon's Ann. Civ. St. Supp. 1918, art. 7394, imposing a franchise tax on foreign corporations, mean the actual capital of such corporation employed by it in its business within the state; "capital stock" and capital being practically equivalent to each other when considered for a franchise.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Stock.]

**3. Taxation ⬅═⇒397—Franchise tax of foreign corporation held not computable on value of stock fixed in charter.**

Where a foreign corporation operating within the state, and employing its entire capital therein, operates under a charter reciting that for the purpose of franchise taxes in the state granting the charter its shares of stock shall be taken to be of the par value of $100 each, and except in this respect the shares are of no par value, a franchise tax imposed under Acts 1919, c. 42, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 7394) cannot be based upon a par value of $100 for each share of stock, but should be based on the total amount of capital employed within the state.

**4. Statutes ⬅═⇒121(7)—Amendatory act changing rates of franchise tax against foreign corporations held not invalid as to expression of subject in caption.**

Acts 1919, c. 42, which in its caption recites that it is "An act to amend chapter eighty-four (84) of the Acts of the Regular Session of the Thirty-Fifth Legislature, entitled 'An act to amend article 7394 of the Revised Civil Statutes of Texas, 1911,' so as to provide that the franchise tax on foreign corporations, therein levied, shall be based on that proportion of the total authorized capital stock, plus the surplus and undivided profits," etc., and declares that one of its purposes is to provide "the minimum franchise tax to be paid by any foreign corporation" (section 1 [Vernon's Ann. Civ. St. Supp. 1922, art. 7394]), and which in the body thereof fixes the rates in the manner of the previous law at amounts which are both minimum and maximum for obtaining a permit to do business in the state, and apply uniformly to all foreign corporations, is not unconstitutional on the ground that the caption does not include the purpose to change the rates from that previously fixed by law.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Proceeding in district court to fix the amount of a franchise tax against the Kirby Petroleum Company a foreign corporation. From a judgment fixing the tax, S. L. Staples, Secretary of State, appeals. Affirmed.

---

W. A. Keeling, Atty. Gen., and Walace Hawkins and John W. Goodwin, Asst. Attys. Gen., for appellant.

Andrews, Streetman, Logue & Mobley, of Houston, for appellee.

### Findings of Fact.

JENKINS, J. Appellee is a foreign corporation, chartered under the laws of Delaware. It has been for some time operating in this state, under a permit to do business in this state. Its principal office and place of business in this state is in Houston. It employs its entire capital in this state.

Within the time prescribed by law appellee made a sworn report to the secretary of state, showing the entire value of its authorized capital stock, surplus, and undivided profits to be $9,387,064.08. This is the correct value of all of the property owned by appellee. Appellant refused to issue a permit to appellee to continue business in this state, for the reason he claimed the actual value of the property owned by appellee was not the correct basis upon which to estimate the amount of the franchise tax due by appellee, but that the same should be estimated on the basis of $75,000,000. This contention is based upon the following fact: Appellee was chartered under the laws of Delaware. It is authorized by its charter to issue 75,000 shares of non-par value. That is to say, these so-called shares were units, upon which no value was fixed by the charter, and which the corporation might dispose of at any price it saw proper. The statute of Delaware (Rev. Code 1915, § 1918a, as added by 29 Del. Laws, c. 113, § 3) authorizing the issuance of appellee's charter is as follows:

"Sec. 4a. *Stock Without Par Value.*—Any corporation may, if so provided in its certificate of incorporation or in an amendment thereof, issue shares of stock (other than stock preferred as to dividends or preferred as to its distributive share of the assets of the corporation or subject to redemption at a fixed price) without any nominal or par value. Every share of such stock without nominal or par value shall be equal to every other share of such stock, except that the certificate of incorporation may provide that such stock shall be divided into different classes with such designations and voting powers or restriction or qualification thereof as shall be stated therein, but all such stock shall be subordinate to the preferences given to preferred stock, if any. Such stock may be issued by the corporation from time to time for such consideration as may be fixed from time to time by the board of directors thereof, pursuant to authority conferred in the certificate of incorporation, or if such certificate shall not so provide, then by the consent of the holders of two-thirds of each class of stock then outstanding and entitled to vote given at a meeting called for that purpose in such manner as shall be prescribed by the by-laws, and any and all such shares so issued, the full consideration for which has been paid or delivered, shall be deemed full-paid stock and not liable to any further call or assessment thereon, and the holder of such shares shall not be liable for any further payments under the provisions of this chapter.

"In any case in which the law requires that the par value of the shares of stock of a corporation be stated in any certificate or paper, it shall be stated, in respect of such shares, that such shares are without par value, and wherever the amount of stock, authorized or issued, is required to be stated, the number of shares authorized or issued shall be stated, and it shall also be stated that such shares are without par value. For the purpose of the taxes prescribed to be paid on the filing of any certificate or other paper relating to corporations and of franchise taxes prescribed to be paid by corporations to this state, but for no other purpose, such shares shall be taken to be of the par value of one hundred dollars each."

Appellant, for the purpose of the franchise tax required by the laws of this state, estimated the 75,000 shares of appellee's non-par stock at $100, each, or $75,000,000.

The judgment of the trial court fixed the amount upon which the franchise tax should be estimated at $9,387,064.08. The trial court further found that the franchise tax owing by appellee was $5,431.75. This is correct if, as a matter of law, the tax should be based upon the valuation of $9,387,064.08, as fixed by the act of 1919.

It is the contention of appellee that the court erred in fixing the rate under the act of 1919, but that the same should be fixed under the act of 1917 (Vernon's Ann. Civ. St. Supp. 1918, art. 7394), for the reason that the act of 1919, in so far as it undertook to change the rate as fixed by the act of 1917, was unconstitutional. Appellant contends that the valuation, for the purpose of the franchise tax due this state, should be fixed at $75,000,000.

### Opinion.

There is no law in this state authorizing a charter to be granted to a corporation with non-par value of stock, but it is not denied by appellant that a foreign corporation of this character is entitled to obtain a permit to do business in this state, upon the payment of the proper amount of franchise tax. The act of 1919 (General Laws, p. 75 [Vernon's Ann. Civ. St. Supp. 1922, art. 7394]) is not different from the law of 1917 (page 168), except that it provides that the tax shall be computed upon the undivided surplus, in addition to the capital stock, and changes the rate. This latter feature of the act will be dealt with, in a subsequent portion of this opinion.

Section 1 of the act of 1919 reads as follows:

"Article 7394. Except as herein provided, each and every foreign corporation authorized, or that may hereafter be authorized, to do business in this state, shall, on or before the first day of May of each year pay in advance

to the secretary of state a franchise tax for the year following which shall be computed as follows: The authorized capital stock, surplus and undivided profits, if any, of such corporation, the total gross receipts of such corporation from all its business and the total gross receipts from all of its business done in Texas for the calendar year immediately preceding shall be ascertained by the secretary of state from sworn reports of the officers of such corporation or by such other method as may satisfy the secretary of state and the capital stock of such corporation upon which the franchise tax herein provided is based shall be that proportion of the authorized capital stock, plus the surplus and undivided profits, if any, of such corporation, as the gross receipts from the Texas business of such corporation done within the state of Texas bears to the total gross receipts of such corporation from its entire business and the capital stock assignable to the Texas business and upon which the fees hereinafter provided shall be calculated and based being thus ascertained, the franchise tax which is hereby provided shall be computed as follows: One dollar on each one thousand dollars or fractional part thereof up to and including one hundred thousand dollars; fifty cents on each one thousand dollars or fractional part thereof in excess of one hundred thousand dollars up to and including one million dollars, and twenty-five cents on each one thousand dollars or fractional part thereof in excess of one million dollars; provided that the minimum franchise tax to be paid by any foreign corporation shall be twenty-five dollars; provided, however, that where such corporation has a surplus or undivided profits the same shall be added to the entire capital stock of such corporation and shall be taken and computed as a part thereof, in determining the amount of such entire capital stock; provided that where a foreign corporation applying for a permit has theretofore done no business in Texas the franchise tax herein provided shall not be payable until the end of one year from the date of such permit at which time the franchise tax shall be computed upon that proportion of the authorized capital stock, plus the surplus and undivided profits, if any, of such corporation ascertained as above required as the gross receipts from its Texas business bears to the gross receipts of the corporation from its entire business done for the same period; and the second payment of such franchise tax shall be made for the period intervening between the date of such first payment and the first day of May following, the proportion of authorized capital stock, plus the surplus and undivided profits, if any, of such corporation, upon which the same shall be computed to be the same proportion that the gross receipts from the Texas business for such period bears to the gross receipts of the corporation from its entire business for the same period, and that thereafter such franchise tax shall be payable annually on the first day of May for the year succeeding computed upon that portion of the authorized capital stock, plus the surplus and undivided profits, if any, of such corporation which the gross receipts from the Texas business of such corporation bears to its entire gross receipts for the calendar year preceding as hereinabove provided."

[1] "The authorized capital stock" of a corporation, chartered under the laws of this, or under the laws of any state having a similar requirement, is the number of shares authorized to be subscribed, and which have actually been subscribed, multiplied by the face or par value of each of such shares. All of such shares must have been subscribed before the charter is issued. R. S. arts. 1122 and 1125. This test cannot be applied to a corporation, the shares of which have no par value, as in the instant case. It does not follow, however, that appellee is entitled to obtain a permit to do business in this state without paying any franchise tax. Appellee makes no such contention.

[2] What is the proper basis for such tax, where the shares of the corporation have no par value? We think that the words, "the capital stock assignable to the Texas business, and upon which the fees hereinafter provided shall be calculated and based" (act of 1919, supra), mean the actual capital of such corporation employed by it in its Texas business.

"The term 'capital stock,' as used in statutes similar to the one under consideration, means, not share stock, but the property of the corporation contributed by its stockholders, or otherwise obtained by it, to the extent required in its charter. * * * 'Capital stock' and 'capital' are practically the equivalent of each other when considered * * * for a franchise." People ex rel. v. Morgan, 178 N. Y. 433, 70 N. E. 967, 67 L. R. A. 960.

In Slater v. Taylor, 241 Ill. 102, 89 N. E. 271, it is said:

"The amount of the capital stock is the amount contributed by the shareholders for the prosecution of the business."

"The amount contributed by the shareholders" is definitely fixed in charters issued by this state. Such amount is the amount of "the authorized capital," for the same must be subscribed at its par value before the charter is issued, but such amount cannot be determined in this way where the stock had no par value.

"'Capital stock' of a corporation, in its primary sense, means the fund, property, or other means contributed, or agreed to be contributed, by the share owners as the financial basis for the corporation's business." Stamford Trust Co. v. Yale, etc., 83 Conn. 43, 75 Atl. 90.

To the same effect is the decision in American Pig Iron Co. v. State Board, 56 N. J. Law, 389, 29 Atl. 160, and other decisions which might be cited. See, also, 1 Cook on Corporations (7th Ed.) § 8.

The Delaware statute, under which appellee's charter was granted, which is copied in our findings of fact herein, contains the following clause:

"For the purpose of the taxes prescribed to be paid on the filing of any certificate or other paper relating to corporations and of franchise taxes prescribed to be paid by corporations to this state, but for no other purpose, such shares shall be taken to be of the par value of one hundred dollars each."

It is by virtue of this statute that appellant contends that, for the purpose of the franchise tax to be paid to the state of Texas, the capital stock of appellee should be estimated at $75,000,000.

Appellant's construction of this statute was upheld by the Supreme Court of Michigan, under a statute of that state in reference to franchise taxes similar to our own. Detroit Mortgage Co. v. Secretary of State, 211 Mich. 320, 178 N. W. 697, 182 N. W. 526. This upon the theory that the law of Delaware, by virtue of which the charter was granted became a part of the charter. The Supreme Court of Kansas held to the contrary. N. A. Petroleum Co. v. Hopkins, 105 Kan. 161, 181 Pac. 625.

In State ex rel. v. Sullivan, 282 Mo. 261, 221 S. W. 728, which involved the question of franchise tax, the Supreme Court of Missouri said:

"We think the view of the matter taken by the Supreme Court of Kansas is sound."

In 1921 New York passed a law permitting corporations to issue non-par value stock. It was held by the Supreme Court of that state, in People ex rel. v. Walsh, 202 App. Div. 651, 195 N. Y. Supp. 184, which is copied in full in appellee's brief that:

"The relator's common stock has no par value. * * * There is no authority in law for the assumption that non-par value stock has a value of $100 per share, for the purpose of assessing the tax under section 181. We think that the tax to which the relator is liable under that section must have as its base the actual capital of relator employed within this state."

[3] But there is authority under the law of Delaware "for the assumption that the non-par value stock has a value of $100 per share," to the extent that said law is applicable. Is it applicable to the franchise tax law of this state? We think not.

"It is the charter alone which, by the law of comity, is recognized and enforced in other jurisdictions. * * * Where a state statute is enacted for the enforcement of a local policy only it will not be presumed that such statutory provisions were intended by the state, or by the shareholders forming the corporation, to enter into the charter contract, and to regulate the company in its transactions outside of the state." Warren v. Bank, 149 Ill. 25, 38 N. E. 125, 25 L. R. A. 746.

In support of this proposition see Nathan v. Lee, 152 Ind. 232, 52 N. E. 989, 43 L. R. A. 820; Stack v. Lumber Co., 151 Mich. 21, 114 N. W. 876, 16 L. R. A. (N. S.) 616, 14 Ann. Cas. 112; Ins. Co. v. Cohen, 179 U. S.

262, 21 Sup. Ct. 106, 45 L. Ed. 184; Guilford v. W. U. Tel. Co., 59 Minn. 332, 61 N. W. 326, 50 Am. St. Rep. 407; Pairpoint Mfg. Co. v. Philadelphia Optical Co., 161 Pa. 17, 28 Atl. 1003; U. S. Mortg. Co. v. Sperry, 138 U. S. 313, 11 Sup. Ct. 321, 34 L. Ed. 978; Life Ass'n v. Harris, 94 Tex. 34, 57 S. W. 635, 86 Am. St. Rep. 813; Seiders v. Life Ass'n, 93 Tex. 198, 54 S. W. 753; Walbridge v. Robinson, 22 Idaho, 236, 125 Pac. 812, 43 L. R. A. (N. S.) 240.

It is only that part of a statute under which a charter is granted which grants or restricts the powers of the corporation that becomes a part of the charter. The Delaware statute, in that portion cited in this opinion, does neither. It relates only to the question of taxation, a matter in which the state of Delaware has no interest in other states. For this reason alone it must be presumed that it was not intended to have extraterritorial force. But we are not left to conjecture in this matter. It is expressly limited to "franchise taxes prescribed to be paid by corporations to this state [Delaware], and for no other purpose."

There is another reason why the law of the state granting the charter should not be applied in this state, in so far as it fixes the value of non-par shares for taxing purposes in such state. Delaware fixes such value at $100 each. Suppose New York should fix such value for such purpose at $50, and New Jersey should fix the same at $10, the result of enforcing such laws in this state would be that, instead of corporations paying in proportion to their capital stock as is contemplated by our statute, different corporations, chartered under the laws of different states, would be taxed unequally, contrary to the letter and spirit of the Constitution and laws of this state.

For the reasons stated, we hold that the franchise tax to be paid by appellee must be based on the total amount of its capital employed in this state, to wit, $9,387.064.08.

[4] The question remains: What rate of taxation is appellee required to pay? The rate is fixed by the act of 1919 (chapter 42, General Laws, p. 75), and is the rate which must be enforced, unless that act is unconstitutional. The appellee contends that the act referred to is unconstitutional, for the reason that it changes the rate from that previously fixed by law, and that the caption of the act does not include the purpose to make such change. The caption referred to is as follows:

"An act to amend chapter eighty-four (84) of the Acts of the Regular Session of the Thirty-Fifth Legislature, entitled 'An act to amend article 7394 of the Revised Civil Statutes of Texas, 1911,' so as to provide that the franchise tax on foreign corporations, therein levied, shall be based upon that portion of the total authorized capital stock, plus the surplus and undivided profits, if any, of such corporation, as

the gross receipts of such corporation from its Texas business bears to its total gross receipts, and providing a minimum franchise tax to be paid by foreign corporations, and declaring an emergency."

The purpose of a caption is to notify all concerned of the scope of the act. This caption declares that one of the purposes of the act is to provide "a minimum franchise tax to be paid by foreign corporations." That is what it does. It declares that:

"The franchise tax which is hereby provided shall be computed as follows: One dollar on each one thousand dollars or fractional part thereof up to and including one hundred thousand dollars; fifty cents on each one thousand dollars or fractional part thereof in excess of one hundred thousand dollars up to and including one million dollars and twenty-five cents on each one thousand dollars or fractional part thereof in excess of one million dollars."

These are the "minimum" amounts for which a foreign corporation can obtain a permit to do business in this state. It is immaterial that they are also the maximum amounts. If the rates are to be uniform, as applied to all foreign corporations, the minimum amounts must necessarily be also the maximum amounts required. This is the manner in which the rates had been fixed in the previous law of 1917, which appellee insists is in force.

Finding no error in the judgment of the trial court herein, the same is affirmed.

Affirmed.