**AMERICAN REFINING CO. v. STAPLES,**
Secretary of State, et al.	(No. 6764.)*

(Court of Civil Appeals of Texas. Austin.
Jan. 30, 1924. Rehearing Denied Feb. 20, 1924.)

Taxation ⬅️378(3) — "Authorized capital stock" of no par value stock corporation for purpose of franchise tax on foreign corporations defined; "capital stock."

The "authorized capital stock" of a no par value stock corporation, for the purpose of the franchise tax imposed on foreign corporations by Rev. St. art. 7394, as amended by Acts 36th Leg. 1919. c. 42. § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 7394), is the amount of money or value of the property, service, or labor which the corporation receives or agrees to receive for stock actually issued, subscribed, or offered for sale, plus the amount necessary to add to the corporate capital to make authorized stock not issued equal in share value to that issued; "capital stock," as applied to par value stock corporations, being used in its strict or technical sense as the amount in money or property subscribed, paid in, or secured to be paid in, which remains the same until changed by the proper legal authority, and not as indicating the value of the corporation's property, taking account of profits or losses or including the surplus, which, with undivided profits. is added to the "authorized capital stock" in fixing the basis for the tax.

[Ed. Note.—For other definitions. see Words and Phrases,, First and Second Series, Capital Stock.]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by the American Refining Company against S. L. Staples, Secretary of State, and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Weeks, Morrow & Francis, of Wichita Falls, for appellant.
W. A. Keeling, Atty. Gen., and Walace Hawkins, Asst. Atty. Gen., for appellees.

McCLENDON, C. J. This was a suit brought by appellant (a "no par value stock" Delaware corporation) to enjoin the Secretary of State from canceling its permit to do business in Texas for failure to pay its franchise tax.

The sole question in the case is whether appellant has tendered to appellee the correct amount of tax due by it under Revised Statutes, art. 7394, as amended by section 1, c. 42, Laws 1919, 36th Leg. (Vernon's Ann. Civ. St. Supp. 1922, art. 7394).

That section provides for a graduated tax based upon that proportion of "the authorized capital stock, plus the surplus and undivided profits" of the foreign corporation, which the "gross receipts from the Texas business of such corporation done within the

state of Texas bears to the total gross receipts of such corporation from its entire business"

This statute was concededly passed with particular reference to par value stock corporations, and the only difficulty encountered is in applying it to corporations whose capital stock has no nominal or par value; the particular question presenting such difficulty being the proper interpretation to be given the expression "authorized capital stock" as applied to a no par value stock corporation.

It is the contention of appellant that this expression means the net value of the assets of the corporation taken at the several times required to be covered in the reports to the secretary of state upon which the tax is estimated. The proper amount, figured on this basis, has been tendered by appellant and refused by appellees.

Appellees contend, on the other hand, that the gross value of the property or assets of the corporation, without deduction for liabilities, furnishes the true measure of the "capital stock" of such corporations, within the meaning of the article.

After careful study of the question, in the light of such adjudications as the reports furnish, we have reached the conclusion that neither of these contentions is correct; but that, applying the closest analogy presented by the no par value to the par value stock corporation, the "authorized capital stock" of the former (as that term is employed in the statute) is the amount of money or the value of the property, services, or labor which the corporation receives or agrees to receive for so much of its capital stock as has been issued, subscribed, or offered for sale, to which should be added, in case of authorized stock not issued, subscribed, or offered for sale, the amount necessary to be added to the corporate capital in order to make such authorized capital stock equal in share value to the share value of the capital stock which has been issued, subscribed, or offered for sale.

This construction, while not contended for, is hinted at in the following quotation from appellees' brief:

"If the technical meaning of 'capital stock' is adopted as contended for by appellant, then we must consider only the money, property received, and labor done originally contributed to the corporation by the shareholders, for this technical 'capital stock' remains the same unless changed by legal authority; in this case not by the statute but by the stockholders. Also the profits and surplus of such corporation is not a part of the capital."

Appellant was chartered on January 8, 1921, under the laws of Delaware, with an authorized capital stock of 100,000 shares, all of equal rank and standing and without par or nominal value. Of this total amount 50,-

000 shares were issued and fully paid, and the remainder not subscribed. The subscribed stock was issued by the .corporation in consideration of certain physical properties consisting of a refinery, pipe lines, pumping stations, producing oil and gas wells, miscellaneous nonproducing leases, the gross value of which was $3,446,443.56; but in the transfer the corporation assumed liabilities aggregating $453,728.87. The net value of the assets which the corporation received from the shareholders for the $50,000 of issued stock was at the time $2,992,714.69.

Permit to do business in Texas was granted June 29, 1921. The assets, gross and net, of the corporation, at the several dates for which it was required to make reports follow:

January 8, 1921, the date of its organization:
Gross assets .......................... $3,446,443 56
Liabilities assumed .................. 453,728 87

Net assets ........................... $2,992,714 69

June 29, 1921, the date its permit was granted:
Gross assets ......................... $3,301,650 00
Liabilities .......................... 619,505 32

Net assets ........................... $2,682,144 68

June 29, 1922, at close of first year's business in Texas:
Gross assets. ........................ $3,074,162 79
Liabilities .......................... 290,941 80

Net assets ........................... $2,783,220 99

January 1, 1923, at close of first complete calendar year of business in Texas:
Gross assets ......................... $3,053,231 07
Liabilities .......................... 397,597 23

Net assets ........................... $2,655,633 84

As we are not called upon to ascertain the amount of the tax, but only to determine whether the full amount was tendered, it is not necessary to give the figures showing the amount of business done by the corporation generally and in Texas during the several periods proved for as a basis for calculation.

Applying the above rule, which we hold to be correct, to the agreed facts, it follows that the 50,000 issued shares of appellant amount to $2,992,714.69, and the amount of its entire authorized capital stock (100,000 shares) is $5,985,429.38.

The no par value stock corporation, with full paid and nonassessable shares, is of quite recent origin. The first statute authorizing such corporations was passed in New York in 1912. The subject had been under consideration by the New York Bar Association since 1892, and the proposal had met with quite general favor among prominent law-writers. A series of articles upon the subject appeared in the 1921 American Bar Association Journal, in which Mr. William B. Cook, of the New York bar vigorously condemned the no par value stock corporation (Stock Without Par Value, 7 A. B. A. J. 531), while Messrs. Halden and Tuthill of the Chicago bar (Uses of Stock Having No Par Val-

ue, 7 A. B. A. J. 579) and Mr. Henry E. Colten, of the Nashville bar (Par Value vs. No Par Value Stock, 7 A. B. A. J. 671) as vigorously defended it. A further article by Mr. Cook entitled "Watered Stock—Commissions —Blue Sky Laws—Stock Without Par Value," appeared in 19 Mich. Law Rev. 583. Other articles upon the subject are: Shares Without Nominal or Par Value, by Victor Morowitz, 26 Harvard Law Rev. 729; Shares Without Par Value, 21 Columbia Law Rev. 278; No Par Value Stock, by Harno and Rice, 56 Am. Law Rev. 321; Thompson on Corporations, 1922 Supp. arts. 3447 to 3447n. Statutes similar to that of New York were adopted first by Maryland in 1916, and between that time and 1922 by 21 other American states and Canada. In 14 other states such corporations have been admitted to do business, and in six they have been excluded. 56 Am. Law Rev. above. A full discussion of the no par value stock corporation will be found in the above articles.

In Kansas and Missouri the right of such corporations to do business under statutes in some respects similar to our own was denied by the authorities, but upheld by the Supreme Courts of those states. Petroleum Co. v. Hopkins, 105 Kan. 161, 181 Pac. 625; State v. Sullivan, 282 Mo. 261, 221 S. W. 728.

An Alabama statute authorizing the creation of such corporations was attacked as being in contravention of a constitutional provision similar to our own, requiring that corporate stock shall be issued only for money, labor done, or property actually received, and the statute was upheld by the Supreme Court of that state. Randle v. Coal Co., 206 Ala. 254, 89 South. 790, 19 A. L. R. 118.

Several methods have been applied in different jurisdictions for fixing the amount of the capital stock of these corporations for franchise tax purposes. In some states an arbitrary value per share is fixed by statute; in others the same arbitrary value per share is fixed by the adopting state as the parent state has fixed for purposes of franchise taxation in that state; while in others the amount is arrived at by some method of estimating the amount of capital used by the corporation in the conduct of its business. Mortgage Corp. v. Sec. of State, 211 Mich. 320, 178 N. W. 697, 182 N. W. 526; American Uniform Co. v. Commonwealth, 237 Mass. 42, 129 N. E. 622; Petroleum Co. v. Hopkins, above; State v. Sullivan, above.

The last method was adopted in this state in the case of Staples v. Petroleum Co. (Tex. Civ. App.) 250 S. W. 293. It is contended by both appellant and appellee that Staples v. Petroleum Company sustains their respective contentions. This is not correct. The particular question we have here for decision was not there involved; and as we read the opinion it throws no light upon it. In that case the corporation had an authorized capital stock of 750,000 shares of no par or nom-

inal value, which, under the laws of Delaware, its parent state, were arbitrarily valued for the purpose only of taxation in that state at $100 per share. The agreed statement of facts in the case stipulated "that the actual or true value of the entire authorized capital stock, surplus, and undivided profits of the plaintiff was $9,387,064.08." The only question presented was whether the arbitrary value of $100 per share as fixed by the Delaware law or the actual or true value of the "entire authorized capital stock, surplus, and undivided profits" as agreed to by the parties should govern. The court took the latter valuation.

It should be noted that there is one marked difference between the laws of New York and those of Delaware, governing the chartering of these concerns:

"A corporation formed under this (New York) statute must state in its certificate of incorporation the amount of capital with which it will carry on business, and it is prohibited from engaging in business or incurring debts until the stated amount of capital shall have been received by the corporation in money or in property at its actual value." 26 Harv. Law Rev. 730.

The Delaware statute (29 Del. Laws, c. 113, § 3), on the other hand provides:

"Such stock may be issued by the corporation from time to time for such consideration as may be fixed from time to time by the board of directors thereof, pursuant to authority conferred in the certificate of incorporation, or if such certificate shall not so provide, then by the consent of the holders of two-thirds of each class of stock then outstanding and entitled to vote given at a meeting called for that purpose in such manner as shall be prescribed by the by-laws, and any and all such shares so issued, the full consideration for which has been paid or delivered, shall be deemed full paid stock and not liable to any further call or assessment thereon and the holder of such shares shall not be liable for any further payments under the provisions of this chapter."

The expression "capital stock" has been given a variety of meanings and shades of meaning, according to the sense or context in which it is employed. 14 C. J. p. 380 et seq. But as used in the statute under consideration "authorized capital stock" can have but one meaning—namely, the total amount of the face or par value of the stock which the corporation under its charter or articles of incorporation is authorized to issue. This amount is definitely fixed once and for all times, except where increased or diminished by charter amendment under legal sanction. It does not fluctuate with the value of the corporate assets or the market value of the shares. In this, and probably in most if not all the states, this nominal or par value must in good faith be paid by the subscribers to the corporation either in money or its just equivalent in property, services, or labor.

Where this is not done the subscriber is liable to creditors for any deficit between the amount actually paid and the face or par value of the stock subscribed. This original capital, or capital stock, cannot be lawfully applied to dividends. The statute clearly has no reference to the "capital" of the corporation in its broadest sense which embraces—

"the aggregate of the sum subscribed and paid in, or secured to be paid in, by the shareholders, with the addition of all gains or profits realized in the use and investment of these sums, or, if losses have been incurred, then it is the residue after deducting such losses." People v. Commissioners, 23 N. Y. 219.

Capital stock is clearly used in the statute in its strict or technical sense as being—

"The amount in money or property subscribed and paid in, or secured to be paid in by the shareholders, and always remains the same unless changed by proper legal authority. Burrall v. Railroad Co., 75 N. Y. 211. The phrase, in its technical sense, is not used to indicate the value of the property of the corporation, and takes no account of profits or losses. State v. Morristown Fire Ass'n, 23 N. J. Law, 195. The surplus of a corporation is no part of its capital stock. Farrington v. Tenn., 95 U. S. 687, 24 L. Ed. 558." Person v. Tax Com'rs, 184 N. C. 499, 115 S. E. 336.

If any doubt could otherwise exist whether the statute employed "authorized capital stock" in this strict or technical sense, it is removed by the requirement that to the "authorized capital stock" shall be added the surplus and undivided profits, if any there be. It is not contended that as applied to par value stock corporations the statute employs "authorized capital stock" in any other than its strict or technical sense as above defined. In fact no other interpretation has ever been given this expression as applied to par value stock corporations, in so far as concerns the computation of their franchise tax. Whatever may be the state of the assets of a par value stock corporation, its authorized capital stock for the purpose of computing the amount of its franchise tax remains the same, until increased or diminished by lawful method.

Both parties concede that our statute "was designed to apply to par value stock corporations and is not readily adjustable to no par value stock corporations." This fact, however, has not been thought by the Attorney General and Secretary of State sufficient to deny permit to such companies, and this view was upheld in Staples v. Petroleum Company, above, following State v. Sullivan and Petroleum Co. v. Hopkins. In applying the statute it can hardly be seriously questioned that the method of ascertaining the amount of "authorized capital stock" of a no par value stock corporation should correspond as nearly as circumstances will admit to the method applicable to par value stock corporations.

Now we apprehend that, although the no par value stock corporations have no nominal value—no dollar mark, so to speak—stated in the face of their stock certificates, still the general rules of law regarding liability of subscribers for nonpayment of the full amount of their subscriptions; and regarding the declaration of dividends only from the profits or surplus of the corporation, apply to no par value the same as to par value stock corporations. From this viewpoint the capital stock of both classes of corporations is employed in the strict or technical sense. The liability of the no par value shareholder depends upon whether he has paid or delivered to the corporation the amount either in money or its equivalent for which the stock was sold, and this amount is as truly the amount of the capital stock of such corporation as is the amount stated in the certificate of the par value stock corporation. This capital stock of the no par value stock corporation cannot lawfully be invaded by the declaration of dividends, any more than can be the capital stock of a par value stock corporation. If, as contended for by appellant, the amount of the capital stock of this class of corporations is the net value of its assets as such value fluctuates from time to time, then any dividend would of necessity have to be paid out of the capital stock of the corporation. It is patent that for the purpose of declaring dividends there must be a capital stock of such corporations, which cannot be lawfully invaded and which is separate from and exclusive of the profits or surplus of the corporation, which alone are applicable to dividends. Any other rule would of necessity either deny the declaration of dividends altogether or render the entire assets of the corporation subject to distribution at any time among the stockholders in the form of dividends, neither of which alternatives could possibly be adopted. So far as concerns the capital stock which has been sold or offered for sale, its amount is as readily ascertainable as is that of the par value stock corporation. The amount of the authorized capital stock, the value of which has not been fixed by the corporation, presents a somewhat different question; but we think most nearly correct, as presenting the closest analogy to the rule applied to par value stock corporations is the rule above announced of placing the amount of the no par value stock, authorized but not offered for sale, at the same share value as that which has been sold or offered for sale. Until the amount has been fixed by the proper corporate officials, we know of no other practical method for its ascertainment.

The conclusions we have reached are substantially those arrived at by the Attorney General of Ohio in interpreting a statute of that state, which to our mind applies to no par value stock corporations substantially the same rule as our statute applies to par value stock corporations, with the sole difference that the Ohio law computes the franchise tax on the "authorized capital stock" of foreign corporations, whereas our statutes add thereto the surplus and undivided profits, if any there be. 64 Ohio Law Bull. 379.

Section 11 of the Ohio Law (108 Ohio Laws, p. 513) provides that for the purposes of the tax—

"the amount of capital with which a foreign corporation having shares of capital stock without par value will carry on business, as stated in its articles * * * of incorporation, or otherwise fixed or as thereafter lawfully changed, shall be deemed to be the authorized capital stock of such foreign corporation."

The pertinent portions of the opinion read:

"In determining the amount of the authorized nonpar value capital stock of a foreign corporation which does not come within section 11 of the act and paragraph (a) of this opinion, I suggest that the following rules be adopted:

"In case of issued and outstanding nonpar value shares, adopt the real consideration for which such shares were issued from time to time.

"With respect to unissued nonpar value shares, adopt the real consideration for which such shares are being offered by the company; but in the event unissued shares are not being offered by the company, then adopt the real consideration for which the last issued nonpar value shares were issued by the company. * * *

"The rules just mentioned should be applied to Delaware corporations. and also to other foreign corporations. organized under the laws of other states, which do not come or bring themselves within section 11 of the act and paragraph (a) of this opinion.

"The Delaware law has specifically placed a valuation of $100 per share on nonpar value shares as far as Delaware fees only are concerned, but of course that provision has no application to fees and taxes to be paid under the Ohio law.

"The case of North American Petroleum Co. v. Hopkins, 181 Pac. 625, has been cited for consideration in this connection, but that case involved the method for determining the value of the 'lawfully issued capital' of the company, and also its 'capital stock' as those terms are used in the Kansas law, and not the amount of the company's 'authorized' capital stock, which is the term used in the Ohio Law."

To adopt the rule contended for by appellant would place no par value stock corporations on an entirely different basis as regards their franchise tax from that applied to par value stock corporations. It would be in effect basing the tax upon the capital or net assets of such corporations instead of basing it upon the "authorized capital stock, plus the surplus and undivided profits." The same is true of the method contended for by appellee, under which the gross assets would form the basis for the tax. Whatever argu-

ments may be urged in favor of the wisdom of either method, it is clear that neither has been adopted by the Legislature as applied to par value stock corporations, and for the courts to apply either method to no par value stock corporations would in effect be unwarranted judicial legislation. The courts must take the statutes as they find them, and apply them to the circumstances of each particular class of corporations so as to distribute the burdens of taxation with equality and uniformity, and without favor or discrimination.

It follows that the trial court correctly denied the injunction sought, and that its judgment should be affirmed. It is so ordered.

Affirmed.