

# THE ATTORNEY GENERAL

## OF TEXAS·

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 20, 1948

Hon. Paul H. Brown          Opinion No. V-746
Secretary of State
Austin, Texas                Re: The legality of permitting a
                             foreign corporation to do
                             business for profit in Texas
Dear Sir:                    when it has no capital stock.

  Sand Springs Home, an Oklahoma corporation, has applied for a permit to do business in Texas under the provisions of Article 1529, Revised Civil Statutes of Texas, for the purpose of engaging in business for pecuniary profit within the State of Texas, as authorized by the provisions of Subdivision 37 of Article 1302, Revised Civil Statutes of Texas. Under the provisions of the charter granted to the corporation by the State of Oklahoma, it is authorized to engage in business for the same purposes provided in Subdivision 37 of Article 1302.

  The corporation has not authorized or issued shares of capital stock but has net capital assets in excess of $100,000.00. Its corporate powers are exercised by trustees; and the profits realized from the business ventures of the corporation are used and applied to the trust purposes set forth in its charter, which are the support of charitable and benevolent organizations, the net result being that the corporation engages in business endeavors for profit, and the trustees then allocate the profits realized among various charitable and benevolent undertakings.

  The Secretary of State returned the application for the permit for the reason that the corporation, being a corporation for profit, but without authorized capital stock, may not be granted a permit to engage in business in Texas since it is unable to comply with the provisions of Article 1530, Revised Civil Statutes of Texas, which provides that:

> "Before such permit is issued such corporation shall show to the satisfaction of the Secretary of State that at least one hundred thousand dollars in cash of their authorized capital stock has been paid in, or that fifty per cent of their authorized capital stock has been subscribed, and at least ten per cent thereof paid in."

Upon this factual situation, you request the answer to the following questions:

"(1) Can the Secretary of State legally approve the application of this corporation for a permit to do business in Texas?

"(2) If this corporation were not engaged in business for profit, could the application be approved?"

The objection to the issuance of the permit is not based upon the nature or the purpose of the business proposed to be done in Texas or any insufficiency of the capital of the corporation, since it is manifest that both the purpose of the business and the sufficiency of the capital are in full compliance with the laws of Texas, but upon the framework or structure of the corporation, since it has no shares of capital stock either authorized or issued.

It is a well-settled rule of law that under the doctrine of comity and in the absence of any prohibitory law or rule of public policy, foreign corporations are entitled to enter a State and make any contracts or transact any business therein falling within the scope of their lawful corporate powers which are permitted to domestic corporations of like kind and character. In accordance with this rule, if the laws of a State prohibit the formation of domestic corporations of a specified character, or for certain purposes, its policy is controlling; and a foreign corporation of that character or created for such purposes would not be allowed to enter the State and transact business therein. However, an intention to exclude foreign corporations from a State is not to be deduced from circumstances that the laws of the State have made no provisions for domestic corporations of like character. And in the absence of express constitutional or statutory inhibition, foreign corporations may enter a State and engage in business therein under the rules of comity, notwithstanding they are organized in accordance with methods which do not obtain in such State. Therefore, the comity of the State will not be withheld from foreign corporations merely because they have a framework or stock structure unlike that for domestic corporations. 17 Fletcher Cyclopedia Corporations (Per. Ed.) Sec. 8335, pages 140 to 142.

The State of Texas recognized these rules of law when foreign corporations created with no-par-value stock first sought to enter the State of Texas before the enactment of Chapter 19A, Title 32, Revised Civil Statutes, in 1925. See Staples v. Kirby Petroleum Company, 250 S.W. 293 (1923); American Refining Company v. Staples, 260 S.W. 614 (1924), affirmed 269 S.W. 420. In these opinions the courts cited with approval the case of North American Petroleum Company v. Hopkins, 181 Pac. 625 by the Supreme Court of Kansas and State

ex rel Standard Tank Car Company v. Sullivan, 221 S.W. 728 by the Supreme Court of Missouri. See also Commonwealth Acceptance Corporation v. Jordan, 246 Pac. 796 (Sup.Ct. of California).

Under the reasoning of these opinions, it is the present rule of law in Texas that there is no express statutory inhibition or prohibition against the admission of foreign corporations entering this State and engaging in business therein, even though it might be that as to their framework and especially as to their stock structure or lack of it, such corporations would not have been entitled to organize as domestic corporations or receive certificates of incorporation as such under the laws of the State of Texas.

It is therefore necessary to construe the provisions of Article 1530, Revised Civil Statutes of Texas, above quoted, as to whether or not by the inclusion of such Section as a part of Chapter 19, Title 32, Revised Civil Statutes of Texas, 1925, "Foreign Corporations," it was the intention of the Legislature to forbid the issuance of a permit to a foreign corporation for pecuniary profit unless the corporate structure thereof provided for authorized or issued capital stock. The Legislature of Texas has classified private corporations into three classes: (1) religious, (2) for charity or benevolence, and (3) for profit (Article 1319, R.C.S., 1925). To determine whether or not it was the legislative intent to prohibit the creation of domestic corporations or the admission of foreign corporations without capital stock to engage in business for profit within the State of Texas, it is necessary to look to all of the statutory provisions governing corporations, domestic and foreign, and their rights, privileges, and liabilities.

Article 7084, Revised Civil Statutes of Texas, provides for the payment of a franchise tax by both domestic and foreign corporations chartered or authorized to do business in Texas or doing business within the State of Texas. Article 7094, Revised Civil Statutes of Texas, exempts from the payment of the franchise tax, among other, corporations organized for the purpose of religious worship or for strictly educational purposes or for purposes of purely public charity. Article 7084, therefore, imposes a franchise tax on all corporations organized for profit except those otherwise specifically exempted by the Legislature. Prior to 1930, the franchise tax was based, among other elements, upon the authorized and issued capital stock of both domestic and foreign corporations (Article 7084, Revised Civil Statutes of Texas, 1925).

However, in 1930 the 41st Legislature enacted Section 2, Chap. 68, Acts 41st Leg., Fifth C.S., p. 220, amending and combining Arts. 7084 and 7085, Revised Civil Statutes of Texas, 1925,

and provided in the amended Article in Subdivision (A) as follows: "Capital stock as applied to corporations without capital stock shall mean the net assets." This amendment has been carried as a part of Article 7084 through subsequent amendments down to and including 1941. It is apparent that the Legislature would not have added the quoted sentence unless it had intended to include corporations organized for profit but without capital stock which previously had not been taxed.

Of further significance is the fact that in the codification of the Revised Civil Statutes of 1925, the Legislature included within the provisions of Chapter 2, Title 32, "Creation of Corporations," Article 1312 dealing with corporations having no capital stock, as follows:

"No society, assocation, company, corporation or institution that does not have a capital stock is required in its charter to make any statement of the amount of capital stock or amount of each share; but it will suffice if the charter contains the other statements required, and also an estimate of the value of the goods, chattels, lands, rights and credits owned by the corporation."

This Article was derived from Article 1224, Revised Civil Statutes of 1911 which formed a part of Chapter 11, Title 25, dealing with religious, charitable and other corporations, and which then read as follows:

"No religious, literary, social, scientific, industrial, benevolent or other society, association, company, corporation or institution that does not have a capital stock will be required in its charter to make any statement of the amount of capital stock or amount of each share; but such charter, if it contains the other statements therein required, and also an estimate of the value of the goods, chattels, lands, rights and credits owned by the corporation will be sufficient." (Emphasis supplied)

The deletion of the emphasized words from Article 1312 and the transposition of Article 1312 from Chap. 9 of Title 32 and its inclusion within Chap. 2 of Title 32 in the 1925 codification is indicative of the intention of the Legislature to permit the creation of domestic corporations for pecuniary profit without the requirement of capital stock under the provisions of Article 1308, Revised Civil Statutes of Texas.

Additional evidence of legislative intent is shown by the enactment in 1943 of Senate Bill 21, Chapter 138, Acts 48th Leg-

islature, 1942, page 219 (Article 1315c, V.C.S.), which provides that corporations without capital stock shall have the right to have their charters extended upon proper application to the Secretary of State. The material portion of the emergency clause reads:

"The fact that there are many corporations operating in the State that were organized without capital stock and that some of them are nearing expiration, and the further fact that the present law is vague and indefinite, creates an emergency. . . ." (Emphasis supplied).

The renewal of charters of corporations created for the support of benevolent, charitable, educational, or religious undertakings had theretofore been sufficiently provided for by Article 1315, Revised Civil Statutes of Texas, which was originally enacted in 1874, so that the inference may be drawn that Article 1315c, V.C.S., was enacted to provide for the renewal of charters of corporations without capital stock which were organized for profit.

The construction of an almost identical statute by the Supreme Court of Massachusetts in Pacific Wool Growers v. Commissioner of Corporation & Taxation, 25 N.E.(2d) 208, is highly persuasive. In that case the Supreme Court of Massachusetts, upon the application for a permit by a foreign corporation without shares of capital stock, granted a writ of mandamus requiring the Commissioner to admit the corporation. The Massachusetts statutes required every foreign corporation, before transacting business in the Commonwealth, to file a copy of its charter and by-laws and a certificate setting forth, among other things, "the amount of its capital stock, authorized and issued, the number and par value of its shares, the amount paid in thereon, and, if any part of such payment has been made otherwise than in money, the details of such payment . . ." The contentions of the parties to the suit and the disposition made of the case is set forth in the last paragraph of the Court's opinion, as follows:

"The respondent contends that, if it had been the legislative intent to include corporations such as the petitioner within the scope of c. 181, it would have been natural for the Legislature to have inserted the words 'if any,' after the words 'the amount of its capital stock' in section 5. We do not think this follows. The words 'the amount of its capital stock' in said section are immediately qualified by the words 'authorized and issued.' To accept this contention would be in effect to require the court to read into the definition of 'Foreign Corporation' . . . the words 'having a capital stock.' . . . When the Business Corporation Law

was enacted . . . the manifest purpose of the Legislature in defining the term 'Foreign Corporation' as used in that act was to include every corporation, association or organization established, organized or chartered under laws other than those of the Commonwealth for purposes for which domestic corporations could be organized under that act. The important consideration was the purpose for which such foreign corporation, association or organization was established, organized or chartered and not the precise form or manner in which it had been so established. Such an intent is in harmony with the rule as to comity of States which extends to corporations the privilege of exercising the powers conferred by their charters beyond the limits of the State, or country, in which they had their origin and legitimate existence."

In answer to your first question, it is our opinion that the Secretary of State may legally approve the application of Sand Springs Farm, an Oklahoma corporation, for a permit to do business in the State of Texas for the purposes provided in Subdivision 37 of Article 1302, Revised Civil Statutes of Texas.

In view of our answer to your first question, it is not deemed necessary to answer your second question.

## SUMMARY

The Secretary of State may legally approve the application for a permit by a foreign corporation to do business in Texas for profit where the purpose clause and the capital requirements of the corporation are in compliance with the laws of Texas, even though the foreign corporation is without authorized or issued capital stock. Staples v. Kirby Petroleum Company, 250 S.W. 293; American Refining Co. v. Staples, 260 S.W. 614; North American Petroleum Co. v. Hopkins, 181 Pac. 625; State v. Sullivan, 221 S.W. 728; Commonwealth Acceptance Corp. v. Jordan, 246 Pac. 796; Art. 1312, R.C.S.; Art. 1315c, V.C.S.; Art. 1530, R.C.S.; Art. 7084, R.C.S.; Pacific Wool Growers v. Commissioner of Corporation & Taxation, 25 N.E.(2d) 208.

Yours very truly

APPROVED:

ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL

By

C. K. Richards
Assistant

CKR/JCP