[No. 21083.   *En Banc.*   March 7, 1928.]

THE STATE OF WASHINGTON, *on the Relation of Fibre-*
*board Products, Incorporated, Plaintiff, v.*
J. GRANT HINKLE, *as Secretary of*
*State, Respondent.*[1]

[1] CORPORATIONS (247)—FOREIGN CORPORATIONS—RIGHT TO DO BUSI-
NESS IN STATE. Const., Art. 12, § 7, providing that foreign cor-
porations shall not be allowed to transact business within the
state upon more favorable conditions than are prescribed for
domestic corporations, does not warrant the exclusion of a
foreign corporation because of the fact that, in its internal
construction, it is permitted to issue common stock of dif-
ferent classes, which domestic corporations cannot do under
local laws.

Application filed in the supreme court January 12,
1928, for a writ of mandate to compel the secretary of
state to issue a license to a foreign corporation to do
business in the state.   Granted.

*C. A. Riddle* and *James Kiefer,* for relator.

*The Attorney General* and *E. W. Anderson, Assist-*
*ant,* for respondent.

MACKINTOSH, C. J.—The relator, a corporation or-
ganized under the laws of the state of Delaware and
doing business there, has presented to the respondent
documents which show that its capital stock is divided
into preferred and common, and the latter into two
classes.

The respondent refused to file the documents and to
accept the statutory fees and issue the license allowing
the relator to do business in this state, "for the reason
that the Fibreboard Products Inc. show a classifica-
tion of common stock." The relator then commenced
this action to compel the issuance of a certificate.

[1]Reported in 264 Pac. 1010.

Rem. 1927 Sup., § 3805, contains the provision that:

"The articles of incorporation may provide that the stock of the corporation (except in the case of the corporations excepted in the last preceding proviso) shall consist wholly of stock having a par value or wholly of stock without nominal or par value, or partly of one class of stock and partly of the other class, and, in the case of non-par-value stock, they shall state the total number of shares of such stock."

Rem. & Bal. Code, § 3686, as amended by ch. 172 of the Laws of 1919, p. 512; Rem. Comp. Stat., § 3812, authorizes the issuance of preferred stock and provides that preferred stock may be divided into different classes. It may be assumed that there exists no provision in our statute for the issuance of common stock of different classes.

Section 7, art. XII, of the constitution provides that a foreign corporation *shall not be allowed to transact business within the state* on more favorable conditions than are prescribed for domestic corporations.

[1] The question for determination is whether the relator is to be prevented from doing business in this state by reason of the fact that, under the laws of the state in which it is incorporated, it has erected a stock structure differing from that permitted by the laws of the state of Washington.

Cases are cited to the point that foreign corporations will not be allowed to do business in this state on more favorable terms than are permitted to domestic corporations; but these authorities do not touch the point involved in this litigation, for as we view it the question here is not as to differences in terms upon which business is to be done, but merely differences as to the internal construction and operations of the corporation.

This question has been squarely presented and extensively considered by at least three supreme courts

of this country, and they have all come to the same conclusion—that, under constitutional and statutory provisions such as obtain with us, there is no justification for denying admission to a foreign corporation merely because, under the laws of the place of its organization, its stock structure may be such an one as could not be erected, had that corporation sought to have its origin in the state in which it is seeking permission to do business. It would be but to repeat convincing and clear announcements of the reasons prompting these courts to this conclusion, to here enter into an extensive analysis of the reasons underlying these decisions. It is sufficient to refer to them and to quote briefly from but one. *North American Petroleum Co. v. Hopkins,* 105 Kan. 161, 181 Pac. 625; *State ex rel. Standard Tank Car Co. v. Sullivan,* 282 Mo. 261, 221 S. W. 728; *Commonwealth Acceptance Corporation v. Jordan,* 198 Cal. 618, 246 Pac. 796.

In the latter case, decided by the supreme court of California, we find it stated:

"The respondent herein contends that a foreign corporation organized for the foregoing purposes may not, under the foregoing inhibition of the Constitution, be permitted to enter the state of California and transact business herein, for two reasons: First, that because of its dual stock structure its stockholders have not an equality of voting power; and . . . As to the first of these reasons, it would seem that the matter of the equality or inequality of voting power in its stockholders is one which concerns merely the internal organism of the corporation and has nothing whatever to do with the transaction of the business of the corporation as between itself and the outside world; and that this being so, the language of this court in the case of *Miles v. Woodward, supra,* with this section of the Constitution immediately in mind, may be aptly applied:

"'The Constitution was not designed to limit the powers of the Legislature when dealing with the or-

ganization and government of corporations which are created by its own will and act. Over such corporations it has and may exercise full powers of control. Over the organization and internal government of foreign corporations it has no such powers. The laws of the state do not have extraterritorial force. It would be meaningless for this state to try to legislate upon the internal affairs of such foreign corporations, and it has not attempted to do so.'

''Applying these principles, we are of the opinion that the question as to whether the stockholders of this foreign corporation have or have not an equality of voting power in the management of its internal affairs is not involved in the present inquiry.''

It appearing, therefore, that the admission of this relator into this state would not permit it to transact business here upon any more favorable terms than those afforded to domestic corporations, there exists no reason why the writ should not be granted directing the respondent to accept the filing offered by the relator upon the payment of the proper fees, and to issue permission for the conduct of business by the relator in this state.

Writ granted.

All concur.