[No. 22022. Department One. November 12, 1929.]

THE STATE OF WASHINGTON, *on the Relation of American Automobile Insurance Company, Appellant,* v. H. O. FISHBACK, *Respondent.*[1]

[1]Reported in 282 Pac. 62.

*Schwellenbach, Merrick & Macfarlane,* for appellant.
*The Attorney General* and *E. W. Anderson, Assistant,* for respondent.

TOLMAN, J.—The appellant, as petitioner, filed its petition in the court below, asking for a review of certain rulings of the insurance commissioner, alleging, in substance, as follows:

That it is a corporation, organized under the laws of the state of Missouri, authorized to engage in the insurance business, and has been so engaged since December, 1911; that on May 24, 1912, it complied with all of the laws of the state of Washington with reference thereto and became qualified, and received a certificate and license to do business in the state of Washington, since which date it has, from year to year, complied with all of the requirements of the state of Washington with reference to conducting an insurance business, has paid all license fees and is duly qualified to engage in the business of writing insurance in the state of Washington; that its capital and surplus available to policy holders for their protection amounts to $3,-768,660.35, of which $1,000,000 is capital and the remainder is surplus; that it has admitted assets of $11,-705,196 and it is in a sound financial condition, having actual assets, exclusive of its capital and in excess of its liabilities, of $2,768,660.35; that, since entering the state of Washington, it has expended large sums of money in building up its business and good will within the state, has paid losses within the state in excess of $1,000,000, has established agencies in all of the principal cities and many other points within the state, and that if it is now denied the right to continue its business within the state, it will be deprived of large property rights acquired as aforesaid.

It is further alleged that on March 5, 1929, the in-

surance commissioner notified the relator that it would be necessary for it to dispose of its investment in the sum of $1,000,000 in the American Automobile Fire Insurance Company, a Missouri corporation, by the sale of stock which it holds in such corporation or by the declaration of a dividend under which the stock of the American Automobile Fire Insurance Company held by it be distributed to its stockholders. The American Automobile Fire Insurance Company is alleged to be wholly owned by, and a subsidiary of, the relator, none of its capital stock being owned by any one else, and that the subsidiary fire insurance company was organized by the relator solely because of the requirements of other states in which the relator is operating; that the assets of the relator are not in any way affected or changed by the organization of the fire insurance company, since it transferred to that subsidiary company $1,000,000 of its assets and received in exchange therefor the whole of its capital stock of the value of $1,000,000; and therefore, as matters now stand, its financial condition is unaffected by the organization of the subsidiary company.

It is further alleged, as appears to be obvious, that a compliance with the insurance commissioner's demand, that it distribute the stock of the subsidiary company by way of a dividend to its stockholders, would reduce its assets to the extent of $1,000,000, and thereby reduce the fund maintained for the protection of policy holders to that extent, and that no benefit to the state of Washington or to policy holders in the state of Washington could arise from its compliance with the demand of the insurance commissioner in that respect.

It further appears that the subsidiary company, the American Automobile Fire Insurance Company, was organized on January 1, 1928, and of course it follows

therefrom that its securities are not technically within the terms of our statute which will be hereafter noticed.

The complaint further alleges that, on April 1, 1929 (presumably because of noncompliance with the demand of March 5, 1929), the insurance commissioner served upon the relator a notice of revocation of its authority to further transact business in the state of Washington, in words as follows:

"Your annual statement for December 31, 1928, shows that you have invested $1,000,000 of your funds in stock of the American Automobile Fire Insurance Company. It shows further that your total paid up capital and surplus as of said date is $3,768,660.35. The American Automobile Fire Insurance Company was organized on January 1, 1928.

"It is my opinion that such investment is in violation of the laws of this state. It would be prohibited to a domestic insurance company by Sections 7062 and 7063, Remington's Compiled Statutes, and I take the position that the same statutes are applicable to foreign insurance companies by reason of Article 12, section VII, of the state constitution.

"It therefore becomes my duty, under section 7039, Remington's Compiled Statutes, to formally notify you that, by reason of your failure to comply with the laws of this state, as aforesaid, your certificate of authority will be revoked at the expiration of ten days from the date of receipt hereof by you."

It is alleged that the action of the insurance commissioner is arbitrary, that it has no basis in law, and therefore the petitioner prays that the commissioner's action be reviewed and that he be restrained and enjoined from enforcing and carrying into effect the terms and provisions of his notice and order of revocation.

To this complaint, a demurrer was interposed and, after argument, the demurrer was sustained. Appellant elected to stand upon its petition and to plead no

further, whereupon a judgment of dismissal was entered, from which it prosecutes this appeal.

██ Our state constitution, § 7, Art. XII, provides:

"No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

Notwithstanding this constitutional provision, appellant takes the position that Rem. Comp. Stat., §§ 7062 and 7063, referring in terms to domestic corporations, cannot be applied to a foreign corporation seeking to do business within this state, because the matters referred to in these sections of the statute relate to the internal affairs of the corporation, with which the public or its policy holders have no concern.

· The sections above referred to, so far as here applicable, read:

"§ 7062. Except upon the approval of the insurance commissioner, no domestic insurance company shall make any investments or loan of its capital, surplus, or reserve to any one person, firm or corporation in excess of ten per centum of the amount of its paid-up capital and surplus, . . ."

· "§ 7063. All investments and loans of the capital and funds of any domestic insurance company, . . . shall be made and kept invested in and loaned on interest or dividend-bearing securities, whereon default for interest has not been made during three years next prior to the making of such loan, and the regular annual dividends, in the case of investments in stocks, shall have been actually earned and paid out of the net profits of not less than four per centum of the par value of such stock during each of the three years next preceding the time of such investment."

It is true that, in the case of *State ex rel. Fibreboard Products v. Hinkle,* 147 Wash. 10, 264 Pac. 1010, we held that a foreign corporation might not be denied admission to do business in this state,

" . . . . merely because, under the laws of the place of its organization, its stock structure may be such an one as could not be erected, had that corporation sought to have its origin in the state in which it is seeking permission to do business."

In that case, our previous cases based upon the constitutional provision here involved were distinguished, but were not overruled, the court there saying:

"Cases are cited to the point that foreign corporations will not be allowed to do business in this state on more favorable terms than are permitted to domestic corporations; but these authorities do not touch the point involved in this litigation, for as we view it the question here is not as to differences in terms upon which business is to be done, but merely differences as to the internal construction and operations of the corporation."

We have here something very different in character from a mere capital stock structure such as was considered in the *Fibreboard* case.

The question here is not of structure at all, but purely and solely the manner of the investment of capital and surplus. Such investment affects the earnings of the investing corporation and may affect its solvency and its ability to protect policy holders and pay creditors within this state. To carry appellant's contention to its logical conclusion, might result in a situation where no state authority would have power to inquire into, or place limitations upon, the investment of capital and surplus of any foreign corporation doing business within this state, and thus require domestic corporations in the same line of business, while regulated and controlled as to their investments, to compete with wholly unregulated and uncontrolled foreign corporations. Such a situation would clearly violate both the letter and the spirit of the constitutional provision already quoted.

We think our earlier cases distinguished in the *Fibreboard* case are controlling here. *State ex rel. Amalgamated Republic Mines Co. v. Nichols,* 47 Wash. 117, 91 Pac. 632; *State ex rel. Baker etc. R. Co. v. Nichols,* 51 Wash. 619, 99 Pac. 876; *State ex rel. Leach v. Fishback,* 79 Wash. 290, 140 Pac. 387. The last case cited is peculiarly apt, and much of its argument might be set out and here adopted, but we think is unnecessary to repeat.

■ The sections of the statute to which we have been referring seem to grant certain discretionary powers to the insurance commissioner in the matter of the investment of the funds of the domestic corporations, and it would seem that, in the furtherance of equality before the law, it being now held that the act is applicable to foreign corporations as well, they should, equally with domestic corporations, enjoy its permissive features. Hence, without in any way now passing upon such matters, the judgment in this case will not be considered a bar to any proceeding which appellant may elect to institute looking toward the securing of action by the insurance commissioner under the permissive features of the statute.

The judgment appealed from is affirmed.

MITCHELL, C. J., PARKER, BEALS, and MILLARD, JJ., concur.