

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

November 16, 1960

Honorable William A. Harrison
Commissioner of Insurance
State Board of Insurance
International Life Building
Austin, Texas

Opinion No. WW-958

Re: May a foreign stock life, health
or accident insurance company,
with par value stock, having a
par value of less than one dollar
per share or more than one hun-
dred dollars per share be granted
a Certificate of Authority to trans-
act the business of insurance in
this State, and related questions.

Dear Mr. Harrison:

You request an opinion from this office and we quote from your letter
as follows:

"A foreign stock life insurance company with shares of
stock of the par value of fifty (50¢) cents per share has filed
application for a Certificate of Authority to do business in
this State. Article 3.02a, Texas Insurance Code, provides that
the par value of each share of stock of a life, health or accident
company organized or <u>operating</u> under the provisions of Chapter
3 'shall be for not less than One ($1.00) Dollar nor more than
One Hundred ($100.00) Dollars.' Therefore, a question has
arisen as to whether or not this company can be admitted to do
business in this State. In considering this point, it was called
to our attention that there are at least four (4) such type com-
panies presently doing business in this State whose shares of
stock have been established at a par value of less than one ($1.00)
dollar by charter amendments subsequently to the date of their
admission to do business in this State. At the time that such
companies were initially authorized to conduct business in this
State the par value of their shares was one ($1.00) dollar or more.

"In view of the above situations, it is urgent that we have
your opinion at the earliest date possible concerning the following
questions:

"(1) May a foreign stock life, health or accident insur-

ance company, with par value stock, having a par value of less than one ($1.00) dollar per share or more than one hundred ($100.00) dollars per share be granted a Certificate of Authority to transact the business of insurance in this State?

"(2) If a foreign stock life, health or accident insurance company, doing business in this State, amends its charter converting its shares into shares of par value less than one ($1.00) dollar or more than one hundred ($100.00) dollars, should the Certificate of Authority of such company to transact the business of insurance in this State be suspended or revoked for non-compliance with the provisions of the laws of this State?"

Your first question is answered in the affirmative.

Prior to the adoption of the Insurance Code in 1951, what is now Article 2.07 of the Code was the only statute dealing specifically with the value of shares of stock in an insurance company organized in Texas. At that time it was Article 4704, Vernon's Civil Statutes, 1925.

When the insurance laws of the State were codified, Chapter 3, thereof, entitled "Life, Health & Accident Insurance," contained various subchapters. Subchapter A is entitled Domestic Companies while B is entitled Foreign Companies.

Contained in Subchapter A is Article 3.02a which reads in part as follows:

"(a) The stock of any life, health or accident insurance company organized or operating under the provisions of this chapter may be divided or converted into shares of either par value or no-par value, or both, all of which shall be fully paid and non-assessable. If divided or converted into shares of par value, each share shall be for not less than One ($1.00) Dollar nor more than One Hundred ($100.00) Dollars . . ."

This provision, included as it was under the domestic companies' subchapter, was not enacted until 1955 at which time the Code was already in existence and the division of "domestic" and "foreign" regulating statutes already established. While the Legislature could have easily expressed its intention that the minimum par value restriction should apply to foreign

companies as well, it did not choose to amend the subchapter of the Code regulating foreign companies, i.e., Subchapter B.

Generally, where the Legislature intended that certain provisions of the Code would apply to both foreign and domestic companies such has been included in both Subchapters A and B. Subchapter A, dealing with domestic companies, contains several requirements which are also contained in B, relating to foreign companies. For instance, Subchapter A, Art. 3.04, Sec. 1, 3 requires of domestic companies:

> "An affidavit made by two (2) or more of its incorporators that all of the stock has been subscribed in good faith and fully paid for, as required by law, in the amount of not less than One Hundred Thousand Dollars ($100,000) capital and that such company is possessed of at least One Hundred Thousand Dollars ($100,000) surplus, as required by law, in addition to its capital. . ."

That requirement, insofar as it relates to capital and surplus, is also contained in Subchapter B, Art. 3.22:

> "No such foreign stock insurance company shall be licensed by the Board of Insurance Commissioners or shall transact any such business of insurance in this State unless such company is possessed of not less than the minimum capital and surplus required by this chapter of a similar domestic company in similar circumstances, including the same character of investments for its minimum capital and surplus. . ."

Likewise "A," by way of Article 3.02, deals with domestic companies and the requirements for incorporating same, while "B" regulates the same subject matter as to foreign companies through Articles 3.20 and 3.21.

In light of the foregoing, the requirement in Subchapter A that shares of par value stock shall be not less than $1.00 nor more than $100.00 does not necessarily become applicable to foreign companies, especially when Subchapter B contains no express requirement of par value stock minimum or maximum for foreign companies.

In 1959, the Legislature amended Article 21.43 of the Insurance Code to read in part as follows:

"No foreign or alien insurance corporation shall be denied permission to do business within this state for the reason that all of its authorized capital stock has not been fully subscribed and paid for; provided

"(1)  that at least the minimum dollar amount of capital stock of such corporation required by the laws of this state (which may be less than all of its authorized capital stock) has been subscribed and paid for; and

"(2)  that it has at least the minimum dollar amount of surplus required by the laws of this state for the kinds of business such corporations seek to write; and

"(3)  that such corporation has fully complied with all laws of its domiciliary state relating to authorization and issuance of capital stock. "

Again, no mention of minimum or maximum par value for foreign companies is made, but rather Section (3) above implies that such matters shall be controlled by the "laws of its domiciliary state. "

As far as can be determined, no Texas court has been called upon to decide the question.  Consequently, we have examined the decisions of foreign jurisdictions for guidance and direction.  In 8 ALR2d 1196, there is contained the most concise statement of existing authority:

"It is now well settled that, in the absence of unmistakable language to the contrary, an intention to exclude a foreign corporation from doing business in a state will not be inferred merely because no provision is made by the law thereof for the organization of domestic corporations similar in stock structure, as based upon an issue or issues, or divisions of, a particular kind of stock, to that of the applicant. "

A closely analogous case is State ex rel Standard Tank Car Company v. Sullivan, (1920) 282 Mo. 261, 221 S. W. 728.  There the Missouri Supreme Court held that a foreign corporation could not be refused the right to do business in Missouri for the reason that a part of the capital stock which the foreign company had issued had no par value and it (the foreign company) could not, for that reason, have been organized as a domestic corporation. The Court stated that where there was no intention or established policy to exclude foreign corporations merely because the domestic laws forbade

the particular kind of corporate structure possessed by such foreign corporation, this reason alone could not be used to exclude the foreign company from doing business in Missouri, at least in the absence of a more express prohibition. Three additional states have adopted this precise construction and in each instance the authority is that of the highest court in the respective state. State ex rel Fibreboard Products v. Hinkle, (1928) 147 Wash. 10, 264 P. 1010; North American Petroleum Co. v. Hopkins, (1919) 105 Kan. 161, 181 P. 625; Commonwealth Acceptance Corp. v. Jordan, (1926) 198 Cal. 618, 246 P. 796.

The basic reasoning behind those cases mentioned above, with which we agree, is that a state, acting through its legislature, in a proper case anu subject to limitations of the Federal and state constitutions, has the power to control and regulate domestic and foreign corporations equally, insofar as they operate within the state, including issuances of corporate stock, and can determine the legal effect of such activities. The only critical question is one of construction of those legislative acts.

Regarding the construction problem, with respect to a statute of the kind in question, particularly if it does not expressly state whether it is applicable to foreign corporations, it is said in 23 Am. Jur. 108, Foreign Corporations, Section 101:

> "In the construction of statutes applicable to corporations, it is not to be presumed that the legislature intended to grant greater rights to foreign than to domestic corporations and to favor them with rights and privileges greater than those conferred upon domestic corporations. No principle of comity requires that foreign corporations be placed in a more favorable situation under the local statutes than similar domestic corporations. However, statutory provisions dealing with the incorporation or organization of corporations, rather than with their business in the state, are ordinarily deemed inapplicable to foreign corporations, as are local laws concerned with strictly corporate acts as distinguished from those which may be done by agents."

When it is remembered that Article 3.02a, insofar as it applies to par value stock, is a prohibitory statute that obviously applies to domestic corporations, the following must likewise be considered with respect to such a prohibitory statute:

> "A general law prohibiting corporations from exer-

Hon. William A. Harrison, page 6 (WW-958)

cising particular powers and privileges ordinarily oper-
ates on foreign as well as on domestic corporations for
the reason that the exercise by a foreign corporation of
such powers in the enacting state would violate the public
policy thereof as indicated by the general restraint im-
posed on its own corporations.  On the other hand, all the
limitations imposed by local statutes upon domestic cor-
porations do not necessarily apply to foreign corporations.
If an act forbidden is of such a nature that the right to per-
form it exists inherently in all corporations unless special-
ly denied, or if the prohibition is designed to establish not
a general public policy toward corporations, but merely a
more effective exercise of visitorial power over them, a
prohibitory statute which does not in terms refer to foreign
corporations may be held not to apply to them." 23 Am. Jur.
109, Foreign Corporations, Sec. 103.

The only language of Article 3.02a which could possibly be construed
to include a foreign company is that portion which reads:

"The stock of any life, health or accident insurance
company organized or operating under the provisions of
this chapter. . ."

The language of this Article makes provision for regulating domestic
companies which came into existence after codification of the insurance
laws, thus were "organized" under Chapter 3.

The term "operating" refers to those domestic companies which were
organized under the insurance laws as they existed before the creation of
Chapter 3.  Though organized before Chapter 3 was created, these domestic
companies are now subject to its requirements, thus are "operating" there-
under.

Consequently, those domestic companies which were organized under
Chapter 3 and those domestic companies which were organized under prior
law but are now operating under Chapter 3 are both regulated thereunder
and the language makes allowance for both situations.  As previously dis-
cussed, such language alone does not indicate an intention on the part of the
Legislature to make foreign companies subject to its requirements.

Inasmuch as there is no provision establishing limits for par value
stock for foreign life, health and accident companies contained in Subchap-

ter B of Article 3 of the Texas Insurance Code; and inasmuch as any control relative thereto would have to be derived from statutes dealing with domestic companies only, we feel that the conclusion reached above conforms to existing authority and is consistent with the intent of the Legislature.

Since we have held that foreign life, health and accident companies may have stock with a par value of less than One Dollar ($1.00) or more than One Hundred Dollars ($100.00) per share, we answer your second question in the negative. Thus, the Certificate of Authority of a foreign stock life, health or accident company, doing business in this State, should not be revoked for non-compliance with Texas insurance laws, if, subsequent to its date of admission to do business here, it amends its charter converting its shares into shares of par value less than One Dollar ($1.00) or more than One Hundred Dollars ($100.00). Certainly if a foreign corporation may enter the State with less than One Dollar ($1.00) par value, it may subsequently amend its charter so as to provide for shares having less than One Dollar ($1.00) par value.

### SUMMARY

1.  A foreign stock life, health and accident company, with par value stock, having a par value of less than One Dollar ($1.00) per share or more than One Hundred Dollars ($100.00) per share, may be granted a Certificate of Authority to transact the business of insurance in this State.

2.  A foreign stock life, health and accident insurance company, doing business in this State, who amends its charter, converting its shares into shares of par value less than One Dollar ($1.00) or more than One Hundred Dollars ($100.00) should not have its Certificate of Authority suspended or revoked for non-compliance with the provisions of the laws of this State.

Very truly yours,

WILL WILSON
Attorney General of Texas

By _____
C. Dean Davis
Assistant Attorney General

CDD/pe

APPROVED:

OPINION COMMITTEE

Morgan Nesbitt, Chairman
Ray Loftin
Arthur Sandlin
Vernon Teofan


REVIEWED FOR THE ATTORNEY GENERAL
BY:        Leonard Passmore